**UNITED STATES of America,
Appellee,**

v.

**David Michael OWEN, Appellant.**

**No. 19612.**

United States Court of Appeals
Eighth Circuit.

Aug. 29, 1969.

William H. Karchmer, Springfield, Mo., Ralph K. Helge, Pasadena, Cal., of counsel, for appellant.

Calvin K. Hamilton, U. S. Atty., and John L. Kapnistos, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT, Chief Judge, GIBSON, Circuit Judge, and MILLER, Senior District Judge.

JOHN E. MILLER, Senior District Judge.

This is an appeal from a jury-waived conviction of wilfully refusing induction into the armed forces of the United States in violation of 50 U.S.C. App. § 462. Defendant's refusal was based upon his claim that selective service authorities should have exempted him, as a conscientious objector, from all military service. Defendant asserts the trial court erred in failing to grant his motion for judgment of acquittal filed after all evidence was in the record. We reverse with directions to enter a judgment of acquittal.

The defendant registered with the Selective Service System on July 26, 1965. He was classified II–S (student deferment) on August 16, 1965, because of his enrollment in business college. Owen first requested that he be classified as a conscientious objector on January 11, 1966. He appeared at a board hearing on February 15, 1966, and was classified I–A–O (conscientious objector available for non-combatant military service), in spite of the fact that he remained qualified for a student deferment.[1] He was ordered to report for a physical examination to be conducted on April 20, 1966. On April 8, 1966, Owen wrote the local board, enclosing a letter from Central Bible College certifying that he had been accepted as a divinity student. He requested a change in classification from I–A–O to IV–D (divinity student exempt from all military service), which the local board refused on the ground that

---

1. 32 C.F.R. § 1623.2 provides that a registrant shall be placed in the lowest class for which he is determined to be eligible, with I–A–O considered the highest classification other than I–A.

he was not actually attending divinity school.[2] Owen reported for his physical examination, and was found fully acceptable for induction. He then requested another II–S classification, and on July 18, 1966, a memorandum was prepared by the local board as follows:

> "Clerk asked Local Board about this registrant. He has not sent his grades from Draughon's Business College, from which he has graduated. He has enrolled in Central Bible Institute and wants his classification changed to 2–S.
>
> "Local Board replied: The registrant has not been consistent in his requests for repeated changes in classification. He asked for this I–A–O and in so doing threw away a 2–S classification. He has also enrolled in another school upon completion of a course in another. This gives the impression that he is trying to run away from the draft.
>
> "Local Board said to leave the registrant in I–A–O."

On July 21, 1966, the local board wrote Owen, stating in part:

> "Reference is made to your letter asking about a 2–S classification. Selective Service Regulations do not allow the local board to issue another 2–S Classification after the course of instruction is completed at one school and a new course is started at another school.
>
> "You have not been consistent with your requests for deferments, so the local board will not change it again."[3]

The defendant was ordered to report for induction on August 9, 1966. Upon receiving certification from Draughon's Business College that Owen was still enrolled as a student, the local board reclassified him I–S–C,[4] and his induction order was cancelled. On August 22, 1966, the defendant attended a hearing conducted by the local board. A memorandum of the proceedings states in part:

> "This registrant was asking first for a 4–D Classification, and was told by the board that he could not have a Divinity Student's classification unless a church sponsored him. He then changed his request for a 2–S.
>
> \* \* \* \* \* \*
>
> "The board cannot permit him to finish one school and start another. The board feels that this registrant is running from the draft, since he is not consistent with his requests and seems to think he is a special case."

On August 23, 1966, Baptist Bible College advised the local board that Owen was entrolled for the fall term which would begin September 6, 1966. On the same date, the board wrote Owen advising him that he could not be given another II–S deferment or another I–S–C deferment, and that it would be unwise to enroll in another college. The local board wrote the State Director of the Selective Service System on August 26, 1966, enclosing Owen's file for review. The pertinent portion of the letter reads:

> "The Board asked this clerk to ask another minister about the case. The minister was allowed to read the transcript of the 22 August 1966 Board meeting, the letter from the Baptist

---

2. Pre-enrollment is sufficient. 32 C.F.R. § 1622.43; United States v. Craig, (3 Cir. 1953) 207 F.2d 888, 890.

3. Selective service regulations then in effect did not restrict the number of consecutive student deferments a registrant might receive as long as an acceptable scholastic standing was maintained.

4. 32 C.F.R. § 1622.15(b) provides in part: "In Class I–S shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university or similar institution of learning and during his academic year at such institution is ordered to report for induction, \* \* \*. A registrant who is placed in Class I–S under the provisions of this paragraph shall be retained in Class I–S (1) until the end of his academic year, or (2) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier."

Bible College, the letter from the minister of the Billings Christian Church, and the letter written by the registrant on the 22 August 1966 regarding the Board meeting. This minister seemed to feel that the registrant is mentally mixed up. He also stated that he has not been ordained and was free to change again after he received this classification. The letter from the Billings Christian Church set him to thinking, however, because that minister had faith in the registrant. He did feel that the actions of the registrant are a little strange, that his references to the Bible are pretty wrong. He did not want to pass judgment on the registrant without meeting him in person which the Board understands."

On August 29, 1966, the state headquarters replied and stated in part:

"Before commenting upon processing in this registrant's case, we must first say that we are greatly concerned over the fact that any of the contents of this registrant's file were made subject to review on the part of a person outside of the Selective Service System. This is a grave procedural shortcoming, and it is the purpose of this comment to warn against a recurrence of such disclosure of privileged information."

On September 14, 1966, the board again denied Owen's request for a IV–D classification, apparently because he had not produced evidence that he was preparing for the ministry under the direction of a recognized church or religious organization. See 32 C.F.R. § 1622.43 (a) (3). On the same date Owen was classified I–A–O. Baptist Bible College certified that Owen was satisfactorily pursuing theology at that institution on September 16, 1966, and on September

19 the Billings Christian Church advised the board that Owen would be directed and sponsored by that church during his theological studies. On October 11 the board refused to reopen Owen's classification. Owen appealed, and on October 20 the appeal board tentatively determined that he should not be classified in Class I–O (conscientious objector exempt from service in the armed forces) or a lower class.[5] The appeal board then referred Owen's file to the Department of Justice for an advisory recommendation.[6]

The Federal Bureau of Investigation conducted an investigation of Owen's character and good faith, the results of which were quite favorable to Owen. According to the resume of the F.B.I. report in the record, only one acquaintance felt that Owen might be insincere in his claim of conscientious objection, and that person could cite no specific reason or event supporting his belief. On March 3, 1967, a Department of Justice hearing examiner interviewed Owen. In the course of the interview Owen reaffirmed his claim of conscientious objection, but disclosed that he planned to abandon his preparation for the ministry at the end of the school year, apparently due to his belief that no denomination is the true church of God. The hearing officer concluded that Owen was sincere in his belief, and recommended that his claim of conscientious objection to all military service be sustained. On August 4, 1967, the Department of Justice submitted its own recommendation to the appeal board, supported by legal citation, that Owen not be classified in Class I–O or I–A–O. That recommendation is apparently based on certain statements made by Owen before the local board, the fact that he requested various classifications after having been denied a

5. The defendant's letter to the appeal board of September 19, 1966, solely concerned his requested IV–D classification. The classification of an appeal board is, however, *de novo*, 32 C.F.R. § 1626.26(a). See DeRemer v. United States, (8 Cir. 1965) 340 F.2d 712. Defendant's appeal

thus necessarily involved the question whether he was a conscientious objector.

6. This procedure, required by former 50 U.S.C. App. § 456(j) and former 32 C.F.R. § 1626.25, was eliminated by the Military Selective Service Act of 1967.

I–O classification, and on the Department's allegation that Owen's conscientious objection did not arise until military service became imminent. The defendant was provided a copy of the Department of Justice's recommendation, to which he replied, reaffirming in some detail his claim of conscientious objection. On October 26, 1967, Owen was classified I–A by the appeal board, and he was ordered by the local board to report for induction on December 12, 1967. He reported to the local board on December 12 and was forwarded to the induction center. Owen submitted to processing on December 13 but refused induction, and the present indictment followed on February 20, 1968.

The defendant contends that, *inter alia*, (1) he was denied basic procedural fairness when adverse information solicited from a minister unconnected with the Selective Service System was considered by the local board, the Department of Justice and the appeal board without informing defendant and allowing him to rebut such information, and (2) that there was no basis in fact for the I–A classification given the defendant by the appeal board.

■■■ We are compelled to state at the outset that we are dealing with conduct by a local board which was basically lawless. The Selective Service Act, § 6(g), states that "students preparing for the ministry" in qualified schools "shall be exempt from training and service" under the Act. The statutory exemption granted full-time divinity students is mandatory, not permissive. Once the statutory requirements are met, there is no discretion left in a local board in evaluating evidence and in determining whether a claimed exemption is deserved. Oestereich v. Selective Service Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402. Owen was clearly entitled to exemption, and the refusal of the local board to reopen his classification was an abuse of discretion. See Vaughn v. United States, (8 Cir. 1968) 404 F.2d 586, and Davis v. United States, (8 Cir. 1969) 410 F.2d 89. We would not, however, be compelled to reverse on that basis, as Owen had left divinity school and had abandoned his preparation for the ministry when he was classified by the appeal board, over one year later.

■■■ The action of the local board in soliciting advice from a minister unconnected with the Selective Service System after allowing him to view the registrant's file evidences a fundamental ignorance of selective service regulations.[7] The adverse commentary was made a part of Owen's file which was forwarded by the local board to the appeal board and by the appeal board to the Department of Justice. We may assume that the information was considered by the appeal board. Striker v. Resor, (D.N.J. 1968) 283 F.Supp. 923. Moreover, it is clear that Owen had no knowledge of the information and, consequently, no opportunity to rebut it until he received a copy of his selective service file subsequent to his refusal to submit to induction. While we may charge literate registrants with knowledge of information with which they are directly confronted, such as that contained on registration or classification cards, we may not expect a working knowledge of selective service regulations or inquiry at the office of the local board to guard against information received from an outside source. Inherent in the most narrow view of due process is the right to know of adverse evidence and the opportunity to rebut its truth and relevance. Chernekoff v. United States, (9 Cir. 1955) 219 F.2d 721. While the information complained of is less than inflammatory, it is clearly adverse and prejudicial, and we have no way of determining the weight and credibility attached to it by the Department of Justice and the appeal board. It is entirely natural for

7. 32 C.F.R. § 1606.31 provides: "Except as provided by law or by the regulations in this part, the records in a registrant's file and the information contained in such records shall be confidential."

an appeal board to rely heavily upon the formal recommendation of the Department of Justice, United States v. Purvis, (2 Cir. 1968) 403 F.2d 555, even though the recommendation is not binding upon the board. In addition, registrants are not allowed to appear in person before an appeal board. Thus, an opportunity to reply in writing after being apprised of all information before the board is indispensable to basic due process. As was said in Gonzales v. United States, (1955) 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, at 348 U.S. 415, 75 S.Ct. 413:

> "Just as the right to a hearing means the right to a meaningful hearing, United States v. Nugent, [346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417] supra; Simmons v. United States, [348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453] supra, so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered."

▮ We hold that Owen was denied a basic procedural right when he was classified by the local board and the appeal board without first being apprised of adverse information in his file and being given an opportunity to rebut it. The Government's contention that Owen had ample opportunity to rebut the improper information before the trial court is without merit. The courts do not sit as "super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies," Witmer v. United States, (1955) 348 U.S. 375, 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428, and are limited in review to determining whether a classification has a basis in fact, Estep v. United States, (1946) 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, or whether a registrant was denied basic procedural fairness. United States v. Freeman, (7 Cir. 1967) 388 F.2d 246. These issues must be decided on the basis of the evidence

and information in the administrative record. Cox v. United States, (1947) 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59. The courts have no role in classification, and the deprivation of a basic procedural right cannot be cured before the trial court.

There was, in addition, no basis in fact for the I–A classification given Owen by the appeal board. This is not a case in which a notice to report for induction stimulated an apparently slumbering conviction of conscientious objection to war. Owen claimed to be a conscientious objector less than six months after registering with the Selective Service System and while classified II–S. His response to the conscientious objector questionnaire establishes his claim *prima facie*. He therein acknowledges his belief in a Supreme Being and states:

> "I sincerely believe God inspired the Holy Bible in which it is clearly stated that Man shall not Kill. Some people believe it is right to kill in time of war, but is it ever right to break any of God's other laws? No! I believe it is more important to obey the word of God."

He describes the source of his belief as follows:

> "The biggest influence on my belief has been from hearing the word of God and studying what was said in the Bible. If you sincerely find out what is said in the Bible and prove it (by prophecy) is the inspired word of God you would have the belief that I do."

▮ Some affirmative evidence indicating insincerity or bad faith must be shown in order to rebut Owen's claim. Witmer v. United States, supra; Dickinson v. United States, (1953) 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Batterton v. United States, (8 Cir. 1958) 260 F.2d 233. The Government does not point out a single act or statement of the defendant as supplying a basis in fact, but takes the position that his acts and

words, considered collectively, and his alleged inconsistency constitute a sufficient basis in fact.

 No statement made by Owen casts doubt on his sincerity. In an appearance before the local board on February 15, 1966, he conceded that his belief was not the teaching of his church, an admission going to the nature of his belief and not to the sincerity with which it is held. It is, of course, unnecessary that conscientious objection arise from church membership or, for that matter, from belief in the Bible. United States v. Seeger, (1964) 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733. It is enough if the registrant has a religious faith and, by reason of that faith, he is opposed to participation in all war. Later in the same hearing, in response to the question, "If your country were invaded, would you change your mind?", Owen allegedly stated, "Yes, it is possible that I would." The defendant was first made aware of his reported response when he received a copy of the recommendation made by the Department of Justice, and in his reply he denied having made the statement. Even if we take the transcript prepared by the board clerk as a true reflection of Owen's reply, it does not supply a basis in fact for the appeal board's classification, as it clearly relates to a contingency and provides no inference as to Owen's state of mind when the incident occurred. See Batterton v. United States, supra.

 In addition, the fact that Owen sought other classifications after being denied a I–O classification is in no way inconsistent with his claimed conscientious objection. Certainly it cannot be rationally contended that he waived or abandoned his claim by requesting classification as a divinity student. Pine v. United States, (4 Cir. 1954) 212 F.2d 93; Cox v. Wedemeyer, (9 Cir. 1951) 192 F.2d 920. Neither do we feel that registrants claiming conscientious objection may apply for other unrelated classifications only at their peril. To so

hold would chill the right Congress sought to protect in enacting § 6(j), and would undermine the principles of individual conscience. It is enough that registrants are confronted with a complex administrative process which is nonetheless deliberately nonadversary, and in which the right to be represented by counsel is expressly denied.[8]

 Viewing the statements and acts of the defendant collectively, as the Government suggests, we are unable to discover any affirmative evidence to support the rejection by the appeal board of the defendant's claim. Mere suspicion and disbelief clearly will not suffice. Dickinson v. United States, supra; United States v. Bryant, (W.D.Ark. 1968) 293 F.Supp. 922.

The conviction of the defendant cannot be sustained. Other questions raised need not be considered. Judgment reversed, with directions to enter a judgment of acquittal.