**UNITED STATES of America,
Appellee,**

v.

**Dennis Murray CUMMINS, Appellant.
No. 19670.**

United States Court of Appeals,
Eighth Circuit.

April 21, 1970.

Rehearing Denied May 26, 1970.

Louis Gilden, St. Louis, Mo., for appellant.

Daniel R. O'Neill, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel R. Bartlett, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

Dennis Murray Cummins appeals his conviction of failing to report for induction under the Selective Service Act, 50 U.S.C. App. § 462. Defendant asserts several grounds of appeal; basic to our discussion are the claimed denial of procedural due process and the claim of no basis-in-fact for his I-A classification. We reverse with directions to enter a verdict of acquittal.

Dennis Murray Cummins was reclassified from II-S to I-A on December 5, 1967.[1] On December 19, 1967, he wrote to his local board and stated that he was morally bound to oppose the Vietnam War. He enclosed a copy of a letter dated December 4, 1967, written to General Lewis B. Hershey. In the letter to Gen-

1. The reasons for this reclassification are not clear since Cummins was still enrolled in school on this date.

eral Hershey, he voiced his opposition to the entire Selective Service System, and because of this opposition, he stated that he refused to apply for a classification Form 150 as a conscientious objector. On December 23, 1967, he again wrote his local board, reiterated the fact that he would not cooperate with the Selective Service laws, and this time, enclosed the ashes of his registration certificate. At various times Cummins had participated in demonstrations against the Vietnam War. On January 4, 1968, Cummins filed a request for a duplicate registration form and asked for reinstatement of his II-S deferment on the basis of his present school enrollment. On January 10, 1968, he appealed his I-A classification and at that time stated he was "swept up on the current of the evergrowing movement against the war in Vietnam * * *" and that he would repent and in the future "stay within the confines of the Selective Service System * * *" On January 29, 1968, Cummins requested a Form 150 as a conscientious objector. At this time he had dropped out of school and was no longer eligible for a II-S deferment. On February 8, 1968, the local board received an eleven page report setting forth the registrant's belief in a Supreme Being and the religious basis of his conscientious objection to war. This report was accompanied by letters from various persons who vouched for his sincerity. On February 15, 1968, after a local board appearance, a duplicate registration certificate was issued by the local board and the defendant was reclassified I-O, as a conscientious objector.

On March 5, 1968, D. M. Wilson, Deputy State Director, wrote to the registrant's local board that the State Director was taking an appeal from the local board's classification pursuant to 32 C. F.R. § 1626.1 (Supp.1969). The letter, which was placed in the registrant's file, specified that the appeal was taken because:

"(1) the registrant's claim of conscientious objection is viewed to be more moralistic and philosophical than religious in nature, (2) he emphasizes his personal activity in social and political antiwar movements as opposed to conscientious religious objection to participation in war in any form, and (3) his actions and statements as documented since December 1967, including open and flagrant violation of federal law, are not consonant with a sincere claim of conscientious objection or the most recent classification action of his local board."

The registrant was notified of the State Director's appeal, 32 C.F.R. § 1626.-11(d) (Supp.1969), but was not informed as to the reasons for the appeal. On March 11, 1968, Cummins requested information from the State Director as to the grounds of the appeal. For reasons unknown, this request, as well as a subsequent request, was denied. On April 23, 1968, the State Appeal Board, without setting forth its reasons, reclassified Cummins to I-A. The registrant protested this action to General Hershey who perfected a Presidential appeal. At no time was the registrant, or his Congressman, who also attempted on behalf of the registrant, to find out the basis of the State Director's appeal, ever informed of the grounds set forth in the Deputy Director's letter of March 5, 1968. On July 18, 1968, the National Appeal Board entered appellant's classification as I-A. On August 22, 1968, Cummins failed to step forward for induction which resulted in his indictment and subsequent conviction.

While the regulations provide that a person appealing may attach a statement as to why he believes the local board's classification was wrong, 32 C.F.R. § 1626.12 (Supp.1969), they do not specifically state that a State Director, appealing under § 1626.1, must furnish the registrant with the reasons for his appeal. However, the registrant is given *the right* to "present all written information * *' * necessary to assist the local board," 32 C.F.R. § 1621.12 (Supp. 1969), and the registrant is also entitled to inspect his own file upon request, 32

C.F.R. § 1606.32 (Supp.1969). It is also clear that the Appeal Board may not consider any information which is not contained in the record sent to it by the local board. 32 C.F.R. § 1626.24 (Supp. 1969). Implicit within these regulations is the right to be notified, upon request, of any statements placed in the registrant's file by the State Director in the process of appealing under 32 C.F.R. § 1626.1 (Supp.1969).[2]

■ The instant case demonstrates such a basic requirement for disclosing the contents of the Deputy Director's letter to the registrant. Every citizen, including youthful registrants under the Selective Service laws, is entitled to be substantively informed as to any governmental action which may affect his liberty or life. No governmental procedure may stand which fails to provide such information. To be both fairly and timely advised is fundamental to the basic concepts of due process. "Clandestine due process" has never found favor or constitutional basis in courts of law. As this court said in United States v. Owen, 415 F.2d 383 (8 Cir. 1969): "Inherent in the most narrow view of due process is the right to know of adverse evidence and the opportunity to rebut its truth and relevance. Chernekoff v. United States, (9 Cir. 1955) 219 F.2d 721." *Id.* at 388.

In DeRemer v. United States, 340 F. 2d 712 (8 Cir. 1965), this court observed that "nothing is reviewed by the Appeal Board * * * which is not also in the possession of, or made available to, the inductee." 340 F.2d at 715. This case arose under 6(j) of the Selective Service Act of 1948 (32 C.F.R. § 1626.-25) providing for a Department of Justice recommendation based upon a hearing before an examiner and an F.B.I. report.[3]

■ It is argued here, however, that the State Director was not making a "recommendation" to the Appeal Board, but was simply stating the reasons why he was appealing. Therefore, it is reasoned the letter was not prejudicial to the registrant. This argument is superficial; whether the adverse allegations were couched in terms of a recommendation or were merely reasons why the local board should be reversed makes little difference. The registrant's file contained a new letter which the Appeal Boards reviewed. The letter set forth adverse opinions furnished by a high official of the Selective Service System. It undoubtedly carried great weight with the lay members of the Appeal Boards. The very least procedural due process can require is that the registrant be informed of the adverse statements. See Weiner v. Local Board No. 4, 302 F.Supp. 266 (D.Del.1969). Cf. Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955); Sicurella v. United States, 348 U.S. 385, 75 S. Ct. 403, 99 L.Ed. 436 (1955); United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953); United States v. Purvis, 403 F.2d 555 (2 Cir. 1968); Nevarez Bengoechea v. Micheli, 295 F.Supp. 257 (D.Puerto Rico 1969).

■ Judgment for acquittal is necessitated for another, equally pervasive reason. Neither the State nor National Appeal Boards set forth the basis of its reversal of the local board's I-O classification. The only possible evidence in the registrant's file which might be considered contradictory to this classifica-

---

2. In Gonzales v. United States, 348 U.S. 407, 415, 75 S.Ct. 409, 99 L.Ed. 467 (1955), the Supreme Court said:
   "Just as the right to a hearing means the right to a meaningful hearing, United States v. Nugent, *supra*, [346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417]; Simmons v. United States, *supra*, [348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453] so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered."

3. See United States v. Hesse, 417 F.2d 141, 143 n. 2 (8 Cir. 1969).

tion is that pointed out by the Deputy Director in his letter effecting the appeal. Under these circumstances we can only assume that the State and National Appeal Boards based their classification on one or more of the grounds set forth in the Deputy Director's letter. See United States v. Hesse, 417 F.2d 141 (8 Cir. 1969). The difficulty encountered here is that the State Deputy Director's reasons do not set forth a basis-in-fact for a I-A classification.

■ Peaceful dissent against the Vietnam War or the Selective Service System itself is not inconsistent with religious beliefs conscientiously opposing war. United States v. Pence, 410 F.2d 557 (8 Cir. 1969); cf. Oestereich v. Selective Service Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). Nor can a registrant's claim of conscientious objection be defeated because, in addition to religious belief, it is also based upon a moral and philosophical objection. Cf. United States v. Levy, 419 F.2d 360 (8 Cir. 1969); Fleming v. United States, 344 F.2d 912 (10 Cir. 1965). Such a claim of conscientious objection is impermissible only when totally devoid of religious belief. United States v. Seeger, 380 U.S. 163, 186, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

■ In the instant case our search of the record demonstrates no "rational or honest" basis to sustain a finding of insincerity as to registrant's religious beliefs. United States v. Hesse, supra. The fact that Cummins sought other classifications and did not originally seek a I-O classification cannot by itself be a basis for denial of such a classification. See United States v. Owen, 415 F.2d 383 (8 Cir. 1969); United States v. Borneman, 424 F.2d 1343 (2 Cir. 1970). The record contains no legal basis of inconsistency or contradiction to the local board's classification of Cummins as a conscientious objector. Batterton v. United States, 260 F.2d 233 (8 Cir. 1958). Cf. United States v. Pyrtle, 423 F.2d 772 (8 Cir. 1970).

Reversed and remanded with directions to enter a judgment of acquittal.

BLACKMUN, Circuit Judge (concurring).

For me, this case is a most troublesome one. Judge Mehaffy's views in dissent are strong and appealing. Yet I am finally persuaded to join Judge Lay in his conclusion that there was something less here than the required procedural due process and that Cummins' conviction therefore must be vacated.

I feel compelled to add an observation which, it seems to me, ought to be obvious but which in this troubled day apparently is not obvious, namely, that a registrant, such as Cummins, who displays inconsistency in attitude, who delays until the last moment his claim to conscientious objector status, who jumps from one position to another, who is critical without being constructive, and who gives the impression of opposing for the mere sake of opposing, must not be surprised when his sincerity and his motives are questioned by those who have the unenviable task of passing upon and judging these matters. Cummins did some foolish things and demonstrated immaturity not to be expected of one of his age and development. It may be hard to grow up these days. Others, however, seem to manage it. Cummins' legal situation would have been much clearer and perhaps might not have been challenged at all had he taken his ultimate position initially or without the abrasive and critical posturing which he assumed.

MEHAFFY, Circuit Judge (dissenting).

Judge Lay predicates his decision to reverse and direct an acquittal on his conclusion that no basis-in-fact exists for the I-A classification for Cummins by the Selective Service Appeal Board; and the further conclusion that Cummins was denied procedural due process since, although he was notified of the State Director's letter of appeal from

his I-O classification by the Local Board, he was not informed as to the reasons prompting this appeal. Judge Blackmun, in concurring, bases his conclusion solely on the procedural due process issue. I disagree with the conclusion reached on each issue and respectfully dissent.

*"Basis-in-Fact."* It is settled law that the courts are not to weigh the evidence to determine whether the classification of a registrant was justified, but only to determine whether the classification given the registrant has a basis-in-fact in the record. Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946).[1] *Estep* is still viable and was cited by this court in the recent cases of United States v. Levy, 419 F.2d 360, 368 (8th Cir. 1969), and Vaughn v. United States, 404 F.2d 586, 589 (8th Cir. 1968). We said in *Levy, supra,* 419 F.2d at 368:

> "The case of Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) established that the scope of review of an appellate court is limited to determining whether the local board's classification has a basis in fact. *Estep* has been followed without contradiction, one of the most recent cases being Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968)."

In *Vaughn, supra,* 404 F.2d at 589–590, we said:

> "We approach the question here, mindful of the admonition of the Supreme Court 'that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to

support such determinations. (Citing case.)' Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 398, 99 L.Ed. 428 (1955).

> "Our scope of review is a narrow one. *Witmer,* supra at 380, 75 S.Ct. 392. We are permitted to overturn the classification 'only if it has "no basis in fact," Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L. Ed. 567.' *Witmer,* supra at 381, 75 S.Ct. at 395; Lockhart v. United States, (9th Cir., October 23, 1968); United States v. Spiro, 384 F.2d 159, 161 (3rd Cir. 1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151 (1968); United States v. Sturgis, 342 F.2d 328, 331 (3rd Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965); Keefer v. United States, 313 F.2d 773 (9th Cir. 1963), or if we find that the local board's action had the effect ·of denying appellant basic procedural fairness."

In this case we review the registrant's classification by the Presidential Board.

A cursory examination of the record here reveals the fallacy in the majority's basis for its conclusion that "the only possible evidence in the registrant's file which might be considered contradictory to this (I-O) classification is that pointed out by the Deputy Director in his letter effecting the appeal." The majority assumes that the State and National Appeal Boards based their classification on one or more of the grounds set forth in the Deputy Director's. letter which, it is asserted, does not set forth a basis-in-fact for a I-A classification. The registrant's file, however, is replete with affirmative evidence supplied by the registrant's conduct and gratuitous

---

1. In Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946), the Supreme Court said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to deter-

mine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

statements, nearly always arrogant and at times revolutionary, indicating Cummins' political, social and philosophic ideology in opposition to the Government's right to conscript personnel, and in particular directed solely at the war in Vietnam, and never once did Cummins indicate any basis of claim to a classification as a conscientious objector until he tired of going to school in his junior year. Although making better than passing grades, he elected to drop out of college in his junior year knowing full well that this action on his part would bring about the loss of his 2-S classification which he had enjoyed.[2]

Cummins' entire career and attitude can be summarized from his letters and material he supplied to his Local Board. These and his actions reflect that he was continually involved in efforts to effect political and sociological changes. In his high school days he became quite active in the civil rights movement, engaging in panel discussions, interracial home visitations, etc. He graduated from high school with high marks and entered college where he immediately became actively involved in various resistance movements. He joined a newly organized student peace union, volunteered for its steering committee, and, to use his own words, he "became rather heavily involved in planning and participating in the activities of the organization: weekly peace vigils, Meals of Reconciliation, speak-outs, literature tables, anti-war films, leafleting, etc." Recounting his experiences, he said, "Of course, I went up to New York City last April to take part in the National Mobilization against the Vietnam War."

During his college career, he stated in a letter to the National Director of the Selective Service System: "For me to request classification as a conscientious objector would be intellectually dishonest and morally hypocritical." In Cummins' original classification questionnaire in 1965 he did not claim conscientious objector status, failing to sign the paragraph headed "Do not sign this series unless you claim to be a conscientious objector."

While at college he helped resurrect the Student Peace Union and later helped form a chapter of the Students for a Democratic Society on the campus. He stated "we of the SPU tried to arouse and mobilize our fellow students to march with us from the Lincoln Memorial to the Pentagon in October. The SDS emphasizes organizing around the issues in people's lives which the structures and restrictions of this society make them powerless to affect: its program, besides its role in the peace movement, includes organizing poor whites in the city and gaining student power and control on the campus."

In October of 1967 he served as a march marshal or monitor during the National Mobilization against the Vietnam War in Washington, D. C. In December of that year he walked in a picket line before the national headquarters of the Selective Service System, and along with four of his "compatriots" talked things over with Lieutenant General Lewis B. Hershey for more than an hour. On December 6 and 7, he demonstrated in New York City at the Whitehall Induction Center. On January 12, 1968, Cummins joined in a demonstration before the Justice Department in Washington, D. C. to express support for the five men indicted for aiding, abetting and counselling draft resistance: Dr. Spock, Reverend Coffin, and Messrs. Raskin, Goodman and Ferber. On January 22, 1968 he marched outside Fort Holabird, Maryland in a picket line to demonstrate solidarity with draft resister Jan Bailey, a SNCC organizer who was scheduled to be inducted that day.

Cummins burned his draft card and sent the ashes to the Local Board, advising the Board to save its stationery and

---

2. The Board asked Cummins why he dropped out of college and he stated that although he was in the middle of his junior year, he was tired and wanted a leave and that he was looking for work.

not send him another as it would receive the same fate.

The whole thrust of his philosophy that can be gleaned from his own conduct and statements is that of resistance and defiance of the Selective Service System and the war in Vietnam.[3] It was not until he was classified I-A and had voluntarily dropped out of school that he undertook to transform his philosophy and actions into a justification for conscientious objector classification, and when the State Appeal Board so classified him by unanimous vote he busied himself writing not only his congressman and a senator from his state, but the President himself, General Hershey and others, claiming that the system had acted unconstitutionally in violating his right to due process. Cummins was very knowledgeable about the selective service laws and regulations. He demanded to see his file on several occasions indicating a full knowledge of his rights. On one such occasion he demanded to see his SS file "like right now."

Cummins articulated his view that the Selective Service System had no place in a free and democratic society and absolutely no legitimacy, no authority and no

rights, and that it should be resisted until it is abolished. Some of the other excerpts from Cummins' statements are set forth in footnote 3, but the whole of his writings are voluminous and unnecessary to quote inasmuch as the foregoing certainly justified the Appeal Board in deciding that Cummins' change of heart and application for conscientious objector classification were lacking in sincerity and not based on any justifiable grounds. Certainly this is a question for the Appeal Board to make judgment on rather than the courts.

Cummins was treated with utmost fairness. The State Appeal Board voted unanimously to classify him I-A which precluded his right to appeal to the National Board of Appeals, commonly referred to as the Presidential Board, but nevertheless the State Director, as did General Hershey, recommended an appeal to the Presidential Board. It was considered by that Board and with finality Cummins was classified as I-A.

We note in passing that Cummins was mildly dealt with when Count II of the indictment was dismissed which charged that he willfully and knowingly did mutilate, destroy and change by burning his Selective Service Notice of Classifica-

3. On December 4, 1967, Cummins wrote the National Director of the Selective Service System a letter which stated in part the following:
"In short, the Selective Service System has no place whatsoever in a free and democratic society; it has absolutely no legitimacy, no authority, no rights. It must be resisted until it is abolished. To work within this system, as in making application for the status of conscientious objector, would implicitly be recognizing both the right of the government to draft its young men and its competency to pass judgment on those who cannot in conscience comply with their directives. * * * For me to request classification as a conscientious objector would be intellectually dishonest and morally hypocritical."
On December 19, 1967, Cummins wrote to the Local Board, forwarding a copy of the December 4, 1967 letter to the National Director, and stating:
"I firmly renounce and refuse all cooperation whatsoever with the system of which

you are a part for two principal reasons: (1) The Selective Service System is the instrument through which the military is able to pursue its course of death and destruction in Vietnam. * * *
"I cannot and will not acknowledge and accept the right and authority of any government—at whatever level—to look into and pass judgment on my own personal conscience. For this reason, too, I am morally bound to resist conscription to the fullest extent possible. * * *
" * * * I will continue to pursue a policy of absolute non-cooperation with your system."
Cummins appeared before the Local Board at his request on February 15, 1968, and a summary of his statements made under oath appear in the file. Among other things, he stated that he is not a member of a particular religious denomination but considers himself religious, and that he knows his beliefs are not orthodox but feels that he is qualified for I-O classification.

tion, Selective Service Form 110, which had been issued to him. This dismissal was in the face of overwhelming and indefensible evidence that would, in the writer's opinion, demand ˙a conviction.

The Selective Service Act of 1967, 50 U.S.C. App. § 456(j) exempts from service in the armed forces any person who "by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code." Unless a person can make a prima facie case as a regular or duly ordained minister of religion or ministerial student, the determining factor in classifying him as I-O is his sincerity in the beliefs which would bring him within the conscientious objector classification. In Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955), the Supreme Court said:

> "[T]he ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is 'affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *.' "

See also United States v. Henderson, 411 F.2d 224, 226 (5th Cir. 1969).

Inconsistent statements of a registrant are sufficient to cast doubt on his sincerity as a conscientious objector and can provide a basis-in-fact for denial of I-O status. Carson v. United States, 411 F.2d 631, 633 (5th Cir. 1969), cert. denied, 396 U.S. 865, 89 S.Ct. 143, 24 L.Ed.2d 119 (1969); Parrott v. United States, 370 F.2d 388, 392 (9th Cir. 1966), cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967). See also United States v. Gearey, 379 F.2d 915, 920 (2nd Cir. 1967), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368, reh. denied, 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611.

A prima facie case of the registrant's sincerity is not made merely by a statement of his beliefs, without more, for his earnestness may be called into question by the very untimeliness with which the alleged opposition to war on religious grounds is embraced, and the claim of I-O status just before a registrant loses his student deferment casts doubt upon his sincerity and constitutes a basis-in-fact for denial of the conscientious objector classification. Carson v. United States, supra, 411 F.2d at 633–634. To the same effect see United States v. Henderson, supra, 411 F.2d at 227; Thompson v. United States, 380 F.2d 86, 88–89 (10th Cir. 1967); Salamy v. United States, 379 F.2d 838, 842 (10th Cir. 1967). The belatedness of a conscientious objector claim may be a factor in assessing its genuineness. United States v. Gearey, supra, 379 F.2d at 919.

In this case Cummins did not claim I-O status until military service became imminent. This chronology of events which comprised defendant's Selective Service history had a direct bearing upon his sincerity and was properly considered by the appeal boards in denying his claim for conscientious objector status. United States v. Henderson, supra, 411 F.2d at 227; Salamy v. United States, supra, 379 F.2d at 842.

In the Witmer case, supra, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428, the Supreme Court affirmed the conviction of petitioner for failing to submit to induction, upholding the Appeal Board's decision denying petitioner classification as a conscientious objector. The Court found that although Witmer stated his beliefs with apparent sincerity, nevertheless, his inconsistent actions and

statements in first applying for classification as a farmer, stating that the ministerial classification did not apply to him, and after being refused deferment as a farmer, then claiming to be a full-time Jehovah's Witnesses minister, and thereafter a conscientious objector, were sufficient to cast doubt on the sincerity of his claim. At page 383, 75 S.Ct. at page 396 the Court said:

"Aside from an outright admission of deception—to expect which is pure naivety—there could be no more competent evidence against Witmer's claimed classification than the inference drawn from his own testimony and conduct."

Here we have practically an outright admission of deception by reason of a statement made prior to Cummins' decision to apply for classification as a conscientious objector, when, in writing to the National Director of the Selective Service System on December 4, 1967, he said: "For me to request classification as a conscientious objector would be intellectually dishonest and morally hypocritical." His other actions and conduct certainly show that his objections were primarily based on political and sociological opposition to the draft and to the war in Vietnam.

"Each claim for an exemption must rest on its own merits, and the Appeal Board must make its decision each time on an individual basis." DeRemer v. United States, 340 F.2d 712, 718 (8th Cir. 1965). Beliefs which are essentially political, sociological or philosophical views or a merely personal moral code do not satisfy the statutory conscientious objector exemption test, and even though the registrant sincerely holds the beliefs which he described in his SSS Form 150 responses, if they reflect an opposition to war which smacks of being essentially political, rather than religious, and could fairly be said to express opposition only to particular wars, such opposition is without the ambit of the statutory exemption. Carson v. United States, *supra*, 411 F.2d at 633. Under such circumstances, there is a basis-in-

fact for the denial of the exemption. United States v. Henderson, *supra*, 411 F.2d at 227–228. His opposition must be to participation in war in any form. United States v. Curry, 410 F.2d 1297, 1298–1299 (1st Cir. 1969); Hunter v. United States, 393 F.2d 548 (9th Cir. 1968).

Exemptions from military service are matters of legislative grace and not a constitutional right, and the selective service registrant has the burden of showing he is entitled to some classification other than I-A. Carson v. United States, *supra*, 411 F.2d at 633; United States v. Carroll, 398 F.2d 651, 653 (3rd Cir. 1968); Salamy v. United States, *supra*, 379 F.2d at 841; United States v. Porter, 314 F.2d 833, 835 (7th Cir. 1963). As was said in Thompson v. United States, *supra*, 380 F.2d at 89, and Salamy v. United States, *supra*, 379 F.2d at 842, we consider the Board's classification of the registrant and its actions taken in this case allowable under the law and not arbitrarily taken.

If there is any factual basis in the evidence for the Appeal Board's classification, we must affirm. Paraphrasing the *Witmer* opinion as we did in Vaughn v. United States, *supra*, the Tenth Circuit said in Salamy v. United States, *supra*, 379 F.2d at 841:

"We neither weigh the evidence to determine if the classification is justified, nor look for substantial evidence to support it. Nor do we sit as a super draft board, substituting our judgment on the weight of the evidence for that of the designated agencies. (Citing cases.) The classification can be overturned only if it has had no basis in fact, for in that instance, the local board has not had jurisdiction of the potential inductee. (Citing case.)"

Since the record is replete with evidence sufficient to form a basis-in-fact for the classification by the Presidential Appeal Board, we have no authority to overturn the classification on this ground.

*Due Process.* If Judge Lay is correct in his conclusion that the appeal boards had no basis-in-fact for the I-A classification, there is no need to reach the constitutional issue. A complete revelation of the cogent facts here convinces the writer that there has been no infringement of Cummins' constitutional rights. I disagree that the letter of appeal constitutes evidence subject to rebuttal as all that the letter of appeal does is to merely meticulously comply with the regulations. 32 CFR 1626.12 provides:

> "The person appealing may attach to his appeal a statement specifying the matters in which he believes the local board erred, may direct attention to any information in the registrant's file which he believes the local board has failed to consider or to give sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file."

Furthermore, the appeal board is restricted in reviewing appeals by 32 CFR 1626.24(b) as follows:

> "(b) In reviewing the appeal and classifying the registrant, the appeal board shall not receive or consider any information other than the following:
>
> "(1) Information contained in the record received from the local board.
>
> "(2) General information concerning economic, industrial, and social conditions."

Admittedly, Cummins was completely knowledgeable regarding the law and regulations governing conscientious objectors. He knew, of course, that he had access to his file at any time and he did take advantage of this and review the file on many occasions.

The State Director appealed from the Local Board's I-O classification on March 5, 1968 and Cummins was notified of said appeal by the Local Board on March 7, 1968. On May 6, 1968 Cummins received notice of his new I-A classification by the State Board. The vote of the State Appeal Board was unanimous, foreclosing Cummins' right to appeal to the National Selective Service Board, sometimes called a Presidential appeal. But regardless of this, on July 1, 1968, Cummins was advised by the executive secretary of the Board that the Director had entered an appeal to the President in his behalf. A review of the correspondence between Cummins and the State Director clearly indicates that what Cummins really wanted and asked for was, first, the rationale of the Director in taking the appeal which the Director is not required to give under the regulations, and, second, that he be permitted to personally appear before the State Board which likewise is not permitted under the regulations.

In Cummins' letter to the State Director on March 11, 1968, he stated " * * * I respectfully but urgently request that you offer me in writing at the earliest possible moment a full explanation of the rationale leading to your appeal regarding my current I-O status." On March 13, 1968 the State Director acknowledged Cummins' letter and advised him "The State Director's appeal is in and of itself an explanation of the action taken for the purpose of permitting a review of the local board's action to be made by the State Appeal Board." The March 13 letter was signed by the Deputy State Director, and in reply thereto Cummins stated that he knew that the appeal was in and of itself an explanation of the action and he requested the privilege of making a personal appearance before the Board, admitting knowledge of the fact that such an appearance is not provided for under the regulations. The pertinent parts of this letter written by Cummins are set forth below:

> "Thank you for your reply to my inquiry of 11 March 1968. I fully realized before I even wrote to your office, however, that 'the State Director's appeal is in and of itself an explanation of the action, taken for the purpose of permitting a review of the local board's action to be made by the

State Appeal Board.' What I was seeking to learn then and want to know now is precisely why the State Director thought it best for all concerned to have my case and my Selective Service classification reopened and reviewed. I am requesting, in other words, that you describe to me the specific grounds, the concrete objections formulated by the State Director on which his extraordinary intervention is based. Please advise me on this matter.

\* \* \* \* \* \*

"Furthermore, in light of the exceptional procedure initiated at the behest of the State Director, I respectfully request the privilege of making a personal appearance before the members of the State Appeal Board. Thus would I be able to present and develop my case as fully and explicitly as possible; thus would the State Appeal Board be able to arrive at a decision founded on the greatest amount of information possible. Colonel, you do not have to regret to inform me that such a personal appearance as I have just proposed is not provided for under the regulations of the Military Service Act of 1967. I am aware of that fact. Rather, I am venturing to suggest that you step beyond the narrow confines of the legislation—not transgressing or violating the law, not acting in an illegal manner—and make an extra-legal arrangement. Such a transcendence of the letter of the law seems to me to be wholly in accord with our deepest hopes and highest ideals that in our country freedom and justice will obtain."

Since the letter of appeal merely refers to matters in the file, it does not constitute evidence and the cases in the majority opinion relating to procedure under the former act where the FBI made an investigation, interviewed witnesses, summarized the evidence gained therefrom, and made recommendations thereon, cannot be equated with the procedure here and said cases are inapposite to the question before us.[4]

Furthermore, in his appearance before the Local Board when he belatedly applied for conscientious objector classification, Cummins appended an eleven-page addendum supplementing his statements on the questionnaire form. He also had produced a number of letters from family, family friends and others attesting to his sincerity which were incorporated in his file. He could add nothing, except perhaps cumulative statements, and such could not possibly deprive the State Appeal Board or the Presidential Appeal Board from making judgment as to his sincerity based on his actions and statements prior to the time his I-A status became imminent. He also wrote the President, the National Director, Senator Kennedy, his own Senator Long, his Congressman and others furnishing the Board copies of the letters which appeared in his file prior to the unanimous action taken by the Presidential Board classifying him I-A. The decision of this Board is the one we here review and obviously its decision on the whole record is one for its determination rather than this court's.

Another cogent reason for disagreeing with the majority's conclusion that Cummins' constitutional due process rights have been infringed is the fact that no prejudice could possibly have resulted from the Presidential Appeal Board's classification.

The law is settled that procedural irregularities in the administration of the Universal Military Training and Service Act, 50 U.S.C. App. § 451 et seq., which do not result in prejudice will not support a claim for relief. Briggs v. United States, 397 F.2d 370, 373 (9th Cir. 1968); Edwards v. United States, 395 F.2d 453, 457 (9th Cir. 1968); United States v. Spiro, 384 F.2d 159, 161 (3rd

4. The referral of the registrant's file to the Department of Justice for an advisory recommendation as required by former 50 U.S.C.App. § 456(j) and former 32 CFR 1626.25 was eliminated by the Military Selective Service Act of 1967. United States v. Owen, 415 F.2d 383, 387, n. 6 (8th Cir. 1969).

Cir. 1967); cert. denied, 390 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151 (1968); United States ex rel. Lipsitz v. Perez, 372 F.2d 468, 469 (4th Cir. 1967), cert. denied, 389 U.S. 838, 88 S.Ct. 57, 19 L. Ed.2d 100 (1967); United States v. Sturgis, 342 F.2d 328 (3rd Cir. 1965), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965); United States v. Corliss, 280 F.2d 808, 817 (2nd Cir. 1960); Martin v. United States, 190 F. 2d 775, 779 (4th Cir. 1951); United States ex rel. Woodard v. Deahl, 151 F. 2d 413, 416 (8th Cir. 1945). Furthermore, the better view is that the person asserting the prejudice has the burden of proving it. United States v. Spiro, *supra*, 384 F.2d at 161. See also Rowton v. United States, 229 F.2d 421, 422 (6th Cir. 1956).

In United States v. Corliss, *supra*, the registrant asserted two claims of procedural unfairness, one of which was that there was included in his file a letter to the Appeal Board, the existence of which was not disclosed to him, that he was entitled under the regulations to know everything that was in his file, and that he was prejudiced by certain statements in the letter (to which he had no opportunity to reply). The letter complained of commented on the recommendation of the Department of Justice, and was claimed by the registrant to be prejudicial. The court, however, concluded that he had not made a showing of prejudice sufficient for reversal. The other claim of procedural unfairness in the *Corliss* case was that the Local Board displayed a degree of prejudice that infected the entire proceeding. Concerning this, the court said:

"In any event, we are here reviewing the action of the Appeal Board, which had the record of the Local Board before it, and was as able to detect prejudice on the part of the Local Board as we are. It is settled that where there is no evidence that the Appeal Board has been misled, unfair conduct by members of the Local Board will not upset a classification. (Citing cases.)" 280 F.2d at 816–817.

The same analogy can be drawn in this case. The State and National Appeal Boards had the registrant's entire file before them and certainly were able to draw their own conclusions from the evidence, independent of any views expressed by the Deputy State Director in his notification of appeal.

In United States ex rel. Lipsitz v. Perez, *supra*, 372 F.2d 468, the inductee claimed that he was prejudiced by the failure of the local board to give him formal notice that his case had been appealed by the director to the President, as required by the regulations, in that he lost the opportunity to enlist voluntarily in the army reserves rather than to serve as a draftee. The district court found that the inductee had actual knowledge of the pendency of the Presidential appeal which, together with his intimate knowledge of the regulations, constituted notice that his order for induction was ineffective so that he could have enlisted in a reserve component and, further, that he lacked a real desire to join a reserve component. The court concluded that no prejudice resulted from the procedural irregularities and that he was not entitled to relief.

In United States v. Spiro, *supra*, 384 F.2d at 161, the registrant contended that he was denied procedural due process when the local board failed to notify him that a government appeal agent was available to advise him, and failed to apprise him of the time within which he could request reconsideration by the appeal board or request a Presidential appeal, etc. The court said, however, that assuming arguendo that the local board did violate one or more selective service regulations, before the conviction could be set aside it must appear that the registrant was prejudiced by the alleged violations which had not been shown.

There is no requirement in the statute that the registrant be furnished a copy of the notice of appeal or the Director's

reasons therefor but merely that he be notified of the appeal. In my view, the letter complained of contained no "new evidence." Although Cummins was entitled to see his file which contained the letter and would have been permitted to do so had he made the request, he was not prejudiced by not having seen it and therefore no reversible error exists.

At most, this case should be merely remanded to the Appeal Board with directions to permit the registrant to file any additional statements he might desire in the light of the State Director's letter to the Board. This was done in Nevarez Bengoechea v. Micheli, 295 F.Supp. 257 (D.Puerto Rico 1969). In that case the State Director had written two letters to the local board which the registrant had not seen but, unlike the letter in the present case, in which only the facts in the file are commented upon, the letters in *Micheli* refuted the registrant's claim for exemption by stating that the occupation of airline pilot was not considered critical by the United States Labor and Commerce Departments and that there were, in fact, no shortages of airline pilots, and in support of the latter statement a newspaper clipping was enclosed concerning layoffs of a number of pilots by Caribbean Atlantic Airline. The local board based its classification on other grounds, but the Appeal Board considered the letters and based its reversal on the information contained in one of them. This was additional information or evidence for consideration by the Board and the court found that in order to assure the registrant of procedural due process, the case should be remanded and the registrant given an opportunity to reply. After granting the petition for a writ of habeas corpus and ordering the petitioner's release from the armed forces, the court said (295 F.Supp. at 259–260):

> "The case is remanded to the Appeal Board and Petitioner shall be furnished copies of the letters of the State Director of the Selective Service which were made part of his appeal record. After Petitioner is given a reasonable period of time to file a reply to the letters, the appeal filed by the State Director shall be considered and decided by the Appeal Board. It is so ordered."

In Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960), the Supreme Court rejected petitioner's claim that he was denied due process because the Department of Justice did not give him timely opportunity before its final recommendation to the Appeal Board to answer the statement of the Local Board as to his claim of devoting one hundred hours to actual preaching as a Jehovah's Witness. In answer to this, the Court said at page 62, 80 S.Ct. at pages 1556–1557:

> "But the statement of the local board attributing this claim to petitioner was in his file. He admitted that he knew it was open to him at all times, and he could have rebutted it before the hearing officer. This he failed to do, asserting that he did not know it to be in his file. Apparently he never took the trouble to find out. Nevertheless he had ample opportunity to contest the statement before the appeal board. * * * We fail to see how such procedure resulted in any prejudice to petitioner's contention, which was considered by the appeal board and denied by it. As was said in *Gonzales*, 'it is the Appeal Board which renders the selective service determination considered "final" in the courts, not to be overturned unless there is no basis in fact. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567.' 348 U.S., at 412–413, 75 S.Ct. at page 412."

Therefore, if the case were remanded to the Appeal Board and Cummins were given an opportunity to file whatever he desired, certainly any procedural irregularities which could have existed would be corrected and the Appeal Board could again consider the case and make the classification. *Cf.* Gearey 1, United

States v. Gearey, 368 F.2d 144 (2nd Cir. 1966).[5]

This case boils down to the simple question of whether the Presidential Board or this court, on the basis of conflicting evidence, is authorized to make judgment on registrant's sincerity in his claim for I-O classification. Assuredly this is a function for the Appeal Board if the Selective Service System is to remain effective.

For the reasons stated, I would affirm the judgment of conviction.

---

5. Gearey 1, United States v. Gearey, 368 F.2d 144, 147, 148 and notes 5 and 6 (2nd Cir. 1966), also contains an interesting history of exemption of conscientious objectors from service. Gearey 2, United States v. Gearey, 379 F.2d 915, (2nd Cir. 1967), cert. denied 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368, reh. denied 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611, is the opinion of the Court upon the second appeal.