UNITED STATES of America,
Plaintiff,

v.

Charles Richard GARRIOTT, Defendant.

No. 23550–1.

United States District Court,
W. D. Missouri, W. D.

Feb. 14, 1972.

Bert C. Hurn, U. S. Atty., Wendell K. Smith, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Ronald M. Sokol, Asst. Federal Public Defender, Kansas City, Mo., for defendant.

MEMORANDUM AND ORDER .

## I.

JOHN W. OLIVER, District Judge.

This is a jury-waived Selective Service case, submitted on a stipulation in which, among other things, it was agreed that the Selective Service file of the defendant, admitted in evidence, was full and complete. That stipulation also established that defendant claims to be a "part of what has been labeled 'The Jesus Movement,' 'Jesus People,' etc." It is appropriate that we give this case more detailed discussion than it would otherwise deserve because defendant's file reveals that Selective Service Boards are likely to encounter the same sort of difficulties in classifying Jesus People as they earlier experienced in classifying Jehovah's Witnesses. Cf. United States v. Stidham (W.D.Mo., 1965) 248 F.Supp. 822, and United States v. Batson (W.D. Mo., 1971) 334 F.Supp. 971 decided November 29, 1971.[1]

We make a full review of the factual circumstances and procedural deficiencies involved in this case in the hope that the errors made by Local Board No. 33 and the Appeal Board for the State of Kansas may be avoided in future conscientious objector cases.

## II.

Defendant registered for the Selective Service System on May 15, 1968. He did not make any conscientious objector claim at that time. As a student at Shawnee Mission South High School and later at the University of Kansas, defendant was consistently given II–S student deferments, the last of which was due to expire October 15, 1970. On Oc-

tober 12, 1970, before the expiration of his II–S deferment, defendant was ordered to report for a physical examination. That order was issued the same day the Local Board received a Student Certificate from the registrar of Sioux Falls College, Sioux Falls, South Dakota, which stated that the defendant "had entered that institution on September 9, 1970, and was satisfactorily pursuing a full-time course of instruction at that institution from which he was expected to receive a degree in June, 1973."

On October 21, 1970, the Local Board received a letter from the defendant which opened with the statement "I know there are forms and precedures [sic] to follow when writing a letter of this nature, but I'm not concerned with form XYZ or whatever it is. I'm just concerned with telling you who I am, What I am, and my plans." Defendant also advised the Local Board that although he was a student at Sioux Falls College, he was not asking for a student deferment. He explained that he had attended the University of Kansas for the preceding two years only because his parents wanted him in college and because "I did not know where I was going in life, or even what I wanted out of life." He stated that he "spent most of my freshman year drunk" and had thereafter "started doing dope."

He then suggested that some unidentified person had "introduced me to the Father, Son and Holy Spirit," and stated: "I have been turning on to God since that night and my life is totally different." He added that "I am in school now but my time outside of class is spent doing simply what Jesus commissioned all Christians to do: 'Go ye into the world and preach in my name, teach in

---

1. Defendant's handwritten statement of his reason for refusing induction is but one example of the similarity of positions taken by this defendant and by some members of Jehovah's Witnesses. Defendant stated "I have taken this step as a Christian. . . . Jesus spoke and set an example for us to follow. In following Jesus the only position in the military that I could hold is that of chaplain.

I am not spiritually matured enough for that yet plus God has called me elsewhere. May God bless you and I pray you know the peace of Jesus in your life."

Other examples of the defendant's apparent susceptibility to the lure of martyrdom similar to that which is not infrequently encountered in some Jehovah's Witnesses cases will be made apparent during the course of this opinion.

my name, heal the sick, and cast out demons.'"

More relevant for purposes of this case was defendant's explanation as to why he would not comply with the order to report for a physical examination. He stated:

The Military is an outrage to anyone who is a Christian. I don't even wish to acknowledge your existence but if I must tell you then I will. I wasn't particularly opposed to the Military until after I became a Christian but If you take time to let the Lord talk I'm sure you'll find that in no way would he want one of his children to participate in the actions you undertake. I don't waste my time doing a lot of demonstrating against the Military because I'm busy telling people about the love of God and how he can come into their lives. I do speak out against you whenever it becomes necessary. You had better look in the mirror right now and get right with God because some day we are all going to stand before him and account for what we did with the time He gave us here on Earth. I could go into the scriptures and what they have to say about killing, hate, greed, lust, capitalism in the hands of non-Christians, etc. but I'm sure you've been confronted with them before. The Lord put me here so please do whatever is necessary to get me an official deferment or whatever is necessary.

Other portions of that letter are consistent with that declaration. After stating that he loved the people of the United States, rather than having a sense of loyalty to the United States as such, he added:

The greatest thing I can do for my people is to always walk in the ways that the Lord leads me. This is the most I can do for my brothers and sisters around the world, yes even those communists who would slit my throat if they got a chance. You see at one time I hated them and would have killed them, I hated God and went against him, but he waited on me and patiently loved me. Now I must patiently love those who despise me. I must feed my enemies, pray for those who use me, and take the message of God wherever he leads me.

Defendant added a postscript in which he stated: "I don't wish a I–Y deferment either because I'm not crazy now—the Lord healed me—a I–Y would be a cop out! I just want a Christian deferment!"

The minutes of the Local Board show that it reluctantly considered defendant's letter received on October 21, 1970 as a request for conscientious objector Form 150.[2]

The Local Board received the completed Form 150 on October 28, 1970. Much of what the defendant stated in that form, particularly in the data attached thereto, contained many references to particular chapters and verses in the Bible, quite like the attachments not infrequently found on Form 150's filed by particular members of Jehovah's Witnesses, or some other fundamentalist sect. It is clear, however, from what the defendant stated that the views and beliefs expressed in his earlier correspondence with the Local Board were being reiterated in his Form 150. Defendant also made his views clear to the Local Board in other correspondence which it received before it rejected defendant's conscientious objector claim.

On October 30, 1970 defendant returned his I–A classification notice issued October 23, 1970 to the Local Board with a statement that he could not accept that classification "in step with leadings of God." He added that "if you review my beliefs you will see that I have two choices: (1) be deferred from all

---

2. The Local Board's files show that someone using red ink underlined the words "I just want a Christian deferment," and added a question mark on the margin of defendant's letter. The Board's minutes reflect that defendant's letter had been received requesting a "Christian deferment." Those minutes then added the word: "Questionable?" Any doubt was apparently ruled in defendant's favor because the minutes also show "Form 150 mailed."

military obligation in order to do God's work or (2) go to jail. The 2nd choice is absurd but if forced to, I will rather than serve in Satan's Army!" The defendant suggested that the Local Board "please pray about these matters and let me know the outcome."

The minutes of the Local Board for November 17, 1970 reflect the single entry "I–A" by a "4–0" vote. There is nothing in the Local Board's minutes, in any of its other records, or in the stipulated evidence which reflects any reason for the Local Board's refusal to grant defendant's claim for conscientious objector status.[3]

On December 1, 1970 the Local Board issued another order for the defendant to report for a physical examination on December 7, 1970. A communication from the Local Board No. 1 of Sioux Falls, South Dakota, indicates that the defendant, as was his right, appeared before that Board and requested a transfer of his Armed Forces physical examination. Local Board No. 1 in Sioux Falls, South Dakota, disapproved that request for transfer.[4]

On December 15, 1970 the Local Board received a letter from the defendant which advised that he would be in Kansas City for about twelve days following the 19th of December, and in which he requested a personal appearance before the Board "to see if we can come to a common understanding that would be fitting to God, yourselves, and me." On December 21, 1970, the Board issued another order directing the defendant to report for a physical examination on January 7, 1971. On December 29, 1970 it advised the defendant that his requested personal appearance would be granted for January 5, 1971, at 9:30 p. m.

An unidentified long-hand note in the Local Board's file reflects that the Local Board apparently talked with the defendant for twenty minutes on January 5, 1971. If that note may be considered as an accurate reflection of the scope of Local Board's official inquiry, a matter not free from doubt, it is apparent that the Local Board gave no consideration whatever to defendant's claimed status as a conscientious objector.[5]

3. We have not overlooked a slip of paper attached to defendant's Form 150 on which some unidentified person or persons made the following longhand notations:

"Review CO form
Beliefs expressed are immature and too general in nature
Conviction is in doubt
Failed to report for exams"

Quite properly, the government does not argue that this slip of paper reflected any official Local Board action in support of its denial of defendant's conscientious objector status. Even if it could be said to reflect official Local Board action, such action would have obviously been invalid because the Local Board's files and records contain absolutely no data upon which to base a finding, for example, that the sincerity of defendant's conviction could be doubted. See United States v. Abbott, (8th Cir., 1970) 425 F.2d 910, cited with approval in Clay v. United States, 403 U.S. 698 at 703, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). At the stage of defendant's processing, the Local Board had not even seen, much less talked with the defendant.

4. A note to defendant's Local Board No. 33 in Johnson County, Kansas, attached to defendant's transfer application by Local Board No. 1 in Sioux Falls, South Dakota, stated the following:

I did not approve the transfer of this registrant as 1) our Dec. call has passed, 2) he stated he would be on independent study and out of the area for our Jan. call, and 3) he stated he does not know at this time whether he will return in Feb. Said a lot depended on this independent study and whatever else God had in mind for him. Said he didn't know if He would want him to go back to school or not.

5. The longhand note stated the following:
1–15–71  Charles Garriott appeared 9:15 p. m.
Been called to ministry. Attending Sioux Falls College (Baptist Affiliation) Majoring in psychology but changing K. U. for 2 years. 1 semester in Sioux Falls College. "I don't desire a student deferment." Took 3¼ units fall—require 4 units for full time.
Asking for deferment as a minister. Has not been ordained.
Wants to get formal degree as minister. Any further questions? None except

Defendant appeared for physical examination on January 7, 1971 and was found to be acceptable. On February 9, 1971 he was ordered to report for induction on February 22, 1971. On February 10, 1971 the Local Board received a letter from the defendant in which he enclosed a large number of letters apparently from other members of the Jesus Movement which reflected his and his friends' preoccupation with literal interpretations of the Bible.[6] On the outside of this mailing, however, defendant placed the following:

*"Attention Local Board*

PLEASE FORWARD THIS INFORMATION AND MY FILE TO THE STATE APEAL [sic] BOARD FOR REVIEW. GOD BLESS YOU."

The minutes of the Local Board indicate the understandable confusion produced by defendant's unorthodox notice of appeal. A Local Board minute entered February 10, 1971 which stated "Order for induction cancelled with permission of state headquarters" was stricken from the minutes. Another portion of a minute which stated "File to Appeal Board" was also stricken. The minute finally entered for February 10, 1971 stated "Appeal received late (note appeal on envelope) postmark date not readable (File not sent). State Director advised Board to review appeal request under 1626.2(d) for extension of time."

The minutes of the Local Board show that on February 16, 1971 the "Board reviewed appeal request. Did not find circumstances beyond control of registrant which would warrant extension of appeal time." The Executive Secretary of the Local Board so advised the defendant by a letter dated February 17, 1971. The Board received another letter from the defendant on February 22, 1971, (who

now signed himself as "Brother Charlie") requesting that his file be sent to the State Appeal Board. On February 25, 1971, the Executive Secretary of the Local Board advised the State Director for Kansas that the defendant had failed to report for induction on February 22, 1971. The State Director was also advised of the Local Board's receipt of defendant's letter on February 22, 1971, which requested that his file be sent to the Appeal Board.

On May 6, 1971, the State Director, on defendant's behalf, but not at defendant's request, ordered that an appeal be granted from the Local Board's I–A classification "in order to avoid injustice and to insure the registrant the benefit of his procedural rights before being subject to induction orders." Later, on May 11, 1971, the State Director ordered that the Local Board cancel the outstanding order for induction and that the defendant be so notified.

The minutes of the Local Board reflect that on June 3, 1971 the defendant had been classified "I–A by Appeal Board." A Cover Sheet transmittal from the Appeal Board, received by the Local Board on June 10, 1971, shows that on June 3, 1971, by 5–0 vote, the defendant had been classified I–A by the Appeal Board.

The stipulation of the parties establishes that the defendant had been "denied a personal appearance before said Appeal Board" and that he "was never advised orally or in writing as to the reason for the denial of the claimed exemption(s) by said Appeal Board." It was further stipulated that a document dated June 8, 1971 and entitled "Re. Charles R. Garriott, 14–33–50–552," signed by one Ernestine S. Koch, "Appeal Board Clerk," was never shown the defendant nor was he ever advised that such a document had been placed in his file until after indictment.

---

why I can't get a minister deferment. Appeal process explained. Use college address for mailing. Departed 9:35 P.M.

6. Many, if not most, of the letters cite or paraphrase particular passages from the

Bible. Only one was couched in more modern language. Perhaps not inaccurately it stated: "If you draft Charlie, you will have a 'Holy Joe' on your hands."

That document apparently was placed in the defendant's file to justify the otherwise unexplained I–A classification which had been made by the Appeal Board on June 3, 1971. It stated the following:

APPEAL BOARD FOR THE
STATE OF KANSAS

503 Kansas Avenue
Topeka, Kansas 66603

June 8, 1971

Re: Charles R. Garriott, 14–33–50–552

Notwithstanding this registrant's request to be granted a ministerial classification, the registrant has not in fact claimed exemption as a conscientious objector by signing either statement A or statement B, Series I—Claim for Exemption, Special Form for Conscientious Objector (SSS Form 150).

The answers given in reference to his religious training and belief are merely quotations, sermonizing rather than explaining his beliefs.

He describes himself as "turned on by God" to the extent he referred to himself as a "nut" thus "his way of showing people he is a Christian."

His main objection, as stated in his letter of appeal, is that he feels "the Lord has a ministry outside the military for him now."

FOR THE APPEAL BOARD
/S/ ERNASTINE S. KOCH

Ernestine S. Koch
Appeal Board Clerk

The Local Board, upon receipt of the Appeal Board's I–A classification issued another order to report for induction, directing that defendant report on June 21, 1971. It is stipulated that the defendant reported on that day but refused to take the traditional step forward. The next day, June 22, 1971, Major R. J. Hemingway, Ceremony Officer at the Induction Center, referred the case to the United States Attorney for this district for prosecution.[7]

Defendant was not indicted until September 16, 1971. Defendant entered a plea of not guilty on October 22, 1971. The case was set for trial on the next regular Division I—Division II trial docket which was to commence November 15, 1971.

On October 15, 1971 the Assistant United States Attorney in charge of this case wrote the following letter to Selective Service Board No. 33, with a copy to Major Paul E. Idol at Selective Service Headquarters in Topeka, Kansas:

As you are aware, this office is currently prosecuting Mr. Garriott for refusing induction on June 21, 1971. In light of the recent District Court decisions in the Western District of Missouri, I am going to ask you to reopen your file on Mr. Garriott and make a determination as to whether he is entitled to a ministerial deferment or in the alternative a classification as a conscientious objector. If after reevaluation you should determine that he is not entitled to either classification, you should then make a detailed written memorandum stating what your findings are, and the reason for your decision. Without a written justification for a classification, the Western District of Missouri will rule in favor of the defendant. To avoid the necessity

---

7. 32 C.F.R., Part 1642, relating to delinquents, does not authorize an officer at the Induction Center to refer a case directly to the United States Attorney for prosecution. Section 1642.41 places the duty upon the Local Board to notify the United States Attorney that a registrant has failed to report for induction or is otherwise delinquent. See Gutknecht v. United States, 396 U.S. 295 at 315, 90 S.Ct. 506, 24 L.Ed.2d 532 footnote 5.

See also United States v. Stoppelman, (1st Cir., 1969) 406 F.2d 127 at 132. We take no further notice of this apparent violation of Selective Service regulations because the United States Attorney properly requested the Local Board to reopen defendant's file. The failure to reopen, under the circumstances, as will be noted, involves other considerations. See Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970).

of dismissing and refiling this case your prompt attention to this matter will be grately appreciated.[8]

On November 5, 1971, apparently after unsatisfactory and unrecorded conversations with the Kansas Selective Service authorities, the United States Attorney for this District wrote the Local Board that "inasmuch as the file has not as of this date [November 5, 1971] been reopened this is to rescind our original request of October 15, 1971." He then added, "It is requested that in future cases involving possible conscientious objectors, that a detailed written memorandum be included in the file stating all the reasons why classification was not made."

Counsel for the defendant was not advised until November 10, 1971 that defendant's file would not be reopened by the Local Board. The government, under the circumstances, did not object to defendant's motion that the case be continued from the November 15, 1971 trial date to the next regular criminal docket which commenced January 24, 1972. On that date, the defendant waived jury trial and the case was submitted on the stipulation of the parties. We have fully considered the briefs of the parties and will order that a judgment of acquittal be entered for the reasons we now state.

### III.

The defendant is entitled to acquittal because (1) the Selective Service file contains no basis in fact for the denial of conscientious objector status to defendant and (2) the defendant was not granted due process of law in the manner in which his claim for conscientious objector status was processed.[9]

When the United States Attorney for this district requested that the Local Board reopen defendant's case he properly advised the Local Board, with a copy of his letter to Selective Service headquarters in Topeka, Kansas, that upon reevaluation of the defendant's classification the Local Board should "make a detailed memorandum stating what your findings are, and the reason for your decision." When he added that "without a written justification for a classification, the Western District of Missouri will rule in favor of the defendant," the United States Attorney was not stating some unique or unusual rule applied only in this judicial district. That rule stems from cases such as Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1946); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L. Ed. 132 (1953); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). The principles stated in those and other cases must be followed by every Selective Service board in every judicial district in the United States.

■ Most recently, our immediately controlling court in reversing still another conscientious objector conviction in United States v. Iverson, (8th Cir., 1972), 455 F.2d 79, decided January 31, 1972, stated that the following is a proper statement of the applicable rule: "Once the registrant presents a prima facie case which would, if true, entitle him to be excepted from I–A classification, a basis in fact for any denial thereof must appear from the record."

■ Both this Court and our Court of Appeals have many times discussed the standards applicable for determining whether a particular registrant has established a prima facie case for conscientious objector status. United States v. Owen, (8th Cir. 1969) 415 F.2d 383, was cited

---

8. The minutes of the Local Board show receipt of the "Letter from U. S. Attorney to reopen case." Neither that minute nor any other Selective Service System record stated any reason why the Kansas Selective Service authorities refused to comply with the proper request of the United States Attorney.

9. Defendant states some thirteen grounds as a basis for acquittal. Since we dispose of this case on the grounds above stated, it is not necessary that we consider other alleged grounds for acquittal. See United States v. Stetter, (5 Cir., 1971) 445 F.2d 472 at 476, fn. 1.

with approval in the recent *Iverson* case. *Owen*, like the defendant in this case, believed that "no denomination is the true church of God" but, also like the defendant in this case, nevertheless was insistent upon a IV–D classification. The real question presented was whether the Appeal Board had validly denied Owen a I–O classification. For an Appeal Board cannot abdicate its duty to consider a registrant's claim for conscientious objector status merely because the registrant presses only for a IV–D classification. On this point, *Owen* stated:

> The defendant's letter to the appeal board of September 19, 1966, solely concerned his requested IV–D classification. The classification of an appeal board is, however, *de novo*, 32 C.F.R. § 1626.26(a). See DeRemer v. United States, (8 Cir., 1965) 340 F.2d 712. Defendant's appeal thus necessarily involved the question whether he was a conscientious objector. [415 F.2d at 387, fn. 5]

Reaching the question of what a registrant needed to state in order to establish a prima facie case, *Owen* concluded that the following statements were sufficient:

> I sincerely believe God inspired the Holy Bible in which it is clearly stated that Man shall not Kill. Some people believe it is right to kill in time of war, but is it ever right to break any of God's other laws? No! I believe it is more important to obey the word of God. . . . The biggest influence on my belief has been from hearing the word of God and studying what was said in the Bible. If you sincerely find out what is said in the Bible and prove it (by prophecy) is the inspired word of God you would have the belief that I do. [Ibid, at 389].

In United States v. Lamberd, (W.D. Mo., 1970) 315 F.Supp. 1362, Chief Judge Becker considered a case in which the registrant, on only a partially completed Form 150, stated:

> I believe in neutrality. God created man to populate the earth not distroy

(sic) it. I do believe in a Supreme Being. . . . The source of my knowledge is from studies from the Bible in the past and the study of God. [315 F.Supp. 1364].

The defendant added that he believed in the use of force only "in the protection of my family and myself" and that he had demonstrated the consistency of his views by "incidental speaking and reguralar (sic) Bible study." Those statements were considered to be sufficient to establish a prima facie case and the defendant was acquitted because no basis in fact existed upon which a denial of conscientious objector status could be predicated.

The Local Board in the case at bar made absolutely no record in regard to why it rejected defendant's claim for conscientious objector status. Nor did the Appeal Board make any appropriate record in regard to its I–A classification of defendant on June 3, 1971. It simply that either board had any basis of fact cannot be said that it appears of record for its rejection of defendant's claim for conscientious objector status.

The government protests defendant's contention that neither the Local Board nor the Appeal Board ever actually considered classification of the defendant as a conscientious objector on the merits. It argues that defendant's contention is "a misstatement of fact." The government further argues that "he [defendant] was afforded the opportunity to make that claim by the Local Board who provided him with an SSS Form, [150], and the written opinion of the Appeal Board indicates that they likewise considered that classification and rejected it for the reasons which they state therein."[10] The government's argument in untenable, both as a matter of fact and as a matter of law.

The Local Board's records, meager as they are, show that the Local Board thought it was "questionable" as to whether defendant was actually seeking conscientious objector status from what he said in his letter received by it on

---

10. The government's reference to "the written opinion of the Appeal Board" is a reference to the document of June 8, 1971, signed by the clerk of that board.

October 21, 1970. That letter showed that the registrant was both uninformed and, perhaps, unconcerned in regard to what form should be used or its number; that the Local Board had what could reasonably be expected to be a religious zealot on its hands; and that if the registrant's case was going to be processed fairly, the registrant was going to need someone besides the Lord to guide him if the Local Board expected to be furnished with adequate and accurate information upon which to base a reasoned judgment.

The government's suggestion that the Appeal Board document dated June 8, 1971 reflects a "written opinion" of that Board is basically inconsistent with the notion that the Appeal Board in fact considered defendant's conscientious objector claim on the merits.

■■■ The stipulated fact that the June 8, 1971 document was never furnished defendant, standing alone, reflects the fact that defendant was denied due process in the processing of his claim. See United States v. Jagla, (N.D.Cal., 1970) 330 F.Supp. 962, at 966, for a collection of the cases which support the rule that the failure to inform the registrant of particular material in his file is a denial of due process.[11] More fundamental, for purposes of this case, is the fact that indulgence in the assumption that the document of June 8, 1971 actually reflected the "reasons" for the Appeal Board's denial of defendant's conscientious objector claim establishes that the Appeal Board actually refused to consider the defendant's conscientious objector claim on the merits. In the first paragraph of that document it was explicitly stated that "the registrant has not in fact claimed exemption as conscientious objector." That erroneous "finding" was based on the notion that because defendant had not signed either statement A or B on page 2 of Form 150, he had not *in fact* claimed consci-

entious objector status. The notion that a registrant is barred as a matter of law from consideration as a conscientious objector for such a reason is untenable. Even the instructions given on Form 150 anticipate that a particular registrant may not be able to sign either statement A or B on page 2 of that form.

■ The opening instruction on Form 150 states that "A registrant who claims to be a conscientious objector shall offer information in substantiation of his claim on this special form which, when filed, shall become a part of his Classification Questionnaire (SSS Form 100)." Final instructions on page 4 of Form 150, immediately above a notice that knowingly making of any false statement or certificate subjects the registrant to a term of five years imprisonment or a fine of not more than $10,000, state that "Every registrant claiming to be a conscientious objector shall make this certificate." The defendant, in full and complete compliance with those instructions signed the certificate in accordance with those instructions.

It is true, of course, that the defendant did not sign either the A or B portion of Series I on page 2 of Form 150. However, the instructions on page 2 of Form 150 explicitly state that "The registrant should sign his name to either statement A or B in this series. *If he cannot sign either one, he must indicate why.*" [Emphasis ours].

In light of all the other information contained in defendant's file prior to the receipt of Form 150 from the defendant, it should not have surprised either the Local Board or the Appeal Board that an instruction phrased in language as discretionary as that used on page 2 of Form 150 would prompt defendant's explanation that "I can't sign either—I must serve the Lord in what he calls me to do."

11. Among the cases properly cited are the Eighth Circuit cases of United States v. Abbott, (8 Cir., 1970) 425 F.2d 910, 913n.; United States v. Cummins, (8 Cir., 1970) 425 F.2d 646, 649; and United States v. Owen, *supra*, 415 F.2d at 388–389. The more recent case of United States v. Rutherford, (8th Cir., 1971) 437 F.2d 182, 188, may be added to that list.

It is perfectly clear that the Appeal Board refused to consider defendant's claim for conscientious objector status solely because neither statement A or B on page 2 of Form 150 was adopted by the defendant. In so doing the Appeal Board erroneously refused to consider the merits of defendant's explicit statements in his Form 150 that "I will have nothing to do with the military or an assignment by them;" "I wish to serve my God with all my being and to follow his commandments and to walk in the footsteps of Jesus;" and "Jesus went all the way for us and we are to follow his example. Are you feeding your hungry enimies [sic]—are you giving to [sic] drink to your thirsty enimies [sic]—or are you killing them in the name of justice and peace. Are you basically saying 'Praise the Lord and pass the ammunition.'"

In *Rutherford, supra,* the Court of Appeals for the Eighth Circuit rejected the government contention that a registrant's failure to sign Series VIII of Form 100 could be considered as some evidence to support an inference of insincerity. It held that its decision in *Abbott, supra,* disposed of the issue. The rationale of both *Rutherford* and *Abbott* requires rejection of the government's argument that failure to sign either statement A or B on page 2 of Form 150 deprives a registrant of his right to have his conscientious objector claim considered on the merits.[12]

We find and conclude that what the defendant said in his Form 150, standing alone, made out a prima facie case for conscientious objector status. When what he said in his other correspondence with the Local Board is read in connection with what the defendant stated in his Form 150, as it must be, any question that the defendant did not make a prima facie case for conscientious objector status is frivolous.[13]

12. There are, of course, other difficulties with the June 8, 1971 Appeal Board document in addition to those discussed in the text. In the second paragraph of that document, the Appeal Board improperly refused to consider the portions of the Bible which defendant incorporated in his Form 150 by reference. Defendant's citations to and quotations from the Bible are to those chapters and verses traditionally cited by fundamentalist religious sects who reach a pacifist position by that particular route.

The statement in the third paragraph of that document that the defendant "referred to himself as a 'nut'" is both an inaccurate and unfair characterization of the idea the defendant was attempting to express. Defendant actually said in his Form 150 that *"my family kinda considers me a 'religious nut.'"* He added that "Jesus was considered a 'nut' so it really does not hang me up if some people laugh at me, too. It is a privilege, I think."

Principles articulated in Sicurella v. United States, 348 U.S. 385, 75 S. Ct. 403, 99 L.Ed. 436 (1955), and Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), are applicable to the circumstances of this case. Because several of the "reasons" reflect the application of improper legal principles, or are not supported by any basis in fact, the failure of the Appeal Board to have designated and made clear its reliance upon some legitimate ground, assuming some one "reason" may have had a basis, in fact, requires acquittal. *Clay* was held to fall squarely within the four corners of *Sicurella* because "since the Appeal Board gave no reason for its denial of petitioner's claim, there is absolutely no way of knowing upon which of the three grounds offered in the Department's letter it relied." The same thing is true in this case.

13. The government's primary argument that this case is controlled by principles articulated in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), does not warrant detailed discussion. That argument was based on the untenable notion that "the first and only time" the defendant made a claim for conscientious objector status was in a letter received by the Local Board on June 18, 1971, a date subsequent to his induction order. In that letter, defendant requested that "my file be given to the 'national appeal board' or the President." It is true that defendant accurately stated in that letter that: "My file does show . . . that I am a conscientious objector." But, as is apparent from what has been stated in the text, it is not true that the letter received June 18, 1971 was either the "first" or "only" time defendant claimed conscien-

## IV.

The thrust of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), and Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L. Ed.2d 810 (1971), considered in the light of the many conscientious objector cases decided by our Court of Appeals, requires the conclusion that Selective Service Boards are under duty to make appropriate inquiry and to hold appropriate hearings, and under the circumstances of particular conscientious objector cases, to afford a registrant adequate assistance in all appropriate cases in which a particular registrant has filed a Form 150 which carries an appropriate conscientious objector certificate executed by the registrant under pain of perjury.

In this particular case we find and conclude not only that the defendant established a prima facie showing for conscientious objector status, but that both the Local Board and the Appeal Board had sufficient information from the defendant's Form 150 and otherwise to require that a determination of the defendant's status could not be made consistent with the constitutional requirements of due process unless the defendant had adequate assistance from someone other than the Lord.

The defendant's answer to the reference section of Form 150, for example, gave reasonable notice to the Local Board that it would encounter difficulty in determining whether the defendant in fact satisfied the three basic tests for conscientious objector status outlined in Clay v. United States. Defendant, with apparent sincerity, answered that section of Form 150 as follows:

I need no witness except that of God! I'm not being smart here. I'm simply saying that I'm sure a lot of people request deferments who are phonies. They get phony witnesses to vouch for them. For this reason I send you straight to the source of my salvation and love. Seriously, pray about it—he'll answer for me as being one of his children. Read Mark 16:14–19—if he'll do that he'll answer your prayer about me.[14]

We do not go so far in this case as to hold that, under the exceptional circumstances presented, the Local Board was under duty to appoint legal counsel to represent the defendant. We do hold that the failure of the Local Board properly to utilize the services of the Government Appeals Agent was, under the circumstances of this case, clearly prejudicial. United States v. Bagley, (5th Cir., 1970) 436 F.2d 55, directed attention to the duties imposed by law on a Government Appeals Agent. It was there noted that 32 C.F.R. § 1604.71 requires that a Government Appeals Agent shall be appointed for each Local Board throughout the United States. That regulation, among other things, imposed upon that Agent the duty:

(d) (5) To be equally diligent in protecting the interests of the government *and the rights of the registrant in all matters.* [Emphasis ours.]

Local Board Memorandum No. 82, issued in 1967 by Selective Service Director Hershey, contemplated that a registrant be fairly advised of the availability of the Government Appeals Agent and, upon request, have the right to confer with him concerning his legal rights, including, but not limited to, his right of appeal. In *Bagley*, a Jehovah's Witness case involving claims for IV–D exemption, I–O conscientious objector classification, and II–A occupational deferment, the Local Board failed to set up an appointment for the registrant

---

tious objector status. That claim, at the very latest, was made when defendant filed his Form 150, long before any order of induction was issued.

14. The defendant also stated that the "Holy Spirit" (described as "administrator of God's power") had assisted him in completing his Form 150. The Local Board was gratuitously advised: "Get on your knees and He'll come to you."

with the Government Appeals Agent. Judge Tuttle noted the complicated questions faced by the registrant and a local board under those circumstances and stated the local board's duty as follows:

Assuming a registrant has several possible deferment claims pending before his local board as the time of his personal appearance, he is not only entitled to have all these claims considered, but is entitled to supplement the record regarding each or any of these claims. The regulations clearly require that the Local Board is required to consider a registrant's overall classification picture, and then place him in the lowest classification applicable to him. See 32 C.F.R. 1622.1 (c), 1623.2. [436 F.2d 55 at 57].

In *Bagley*, as in this case, it was clear that the defendant was deprived of his right meaningfully to support all possible classifications and that, because of the manner in which the personal interview was conducted, the defendant "simply never had the opportunity to adequately state his case." The government argued in *Bagley* that the failure to arrange for an appointment with the Government Appeals Agent was not prejudicial because such an official "is not an attorney representing a registrant before the board" and that "as far as beneficial service to the registrant is concerned, the appeals agent may only advise him and file his appeal." *Bagley* held, however, that under the circumstances of that case, the failure to arrange an appointment with the Government Appeals Agent was clearly prejudicial for the following reasons:

From the regulation regarding the duties of the appeals agent, it is clear that his function is or can be much more significant than the Government claims. He has the power to suggest a reopening of the local board's classification. He can recommend consideration of Appeal Board decisions as well as recommend Presidential appeals. Surely, in living up to his duty to be "equally diligent in protecting the interests of the Government and the registrant in all matters," 32 C.F.R. 1604.71(5), it can readily be assumed that upon discovering that only one of the three pending claims was discussed at appellant's personal appearance, he would have requested a reopening so that all relevant information could be included in the record. Such a request would have been in the best interest of the registrant and the government. It would have given the registrant an opportunity to adequately make out his case and would have protected the Board from issuing an invalid induction order. [436 F.2d at 59]

United States v. Stoppelman, (1st Cir., 1969) 406 F.2d 127, dealt with a registrant who objected to participation in the war in Vietnam. As a person of Jewish faith, he did not become aware that such a person could qualify for conscientious objector status until after he had refused induction. A question was presented as to whether the Local Board failed to consider a letter received before notice of induction as a request for Form 150. Although the court affirmed the conviction under all the circumstances, it noted that:

Some thoughtful probing of appellant's views might either have caused appellant to change them or to change his intended course of conduct by seeking reclassification as a Conscientious Objector. If the board were convinced, the subsequent course of events would have been avoided. The localized emphasis of the Selective Service System ought to foster such efforts to avoid the inexorability of fate stemming from premature judgments based on misunderstanding of regulations which must seem incredibly complex to the layman. [406 F.2d at 130]

The Government Appeals Agent was obviously the proper official within the Selective Service System to perform the function of "thoughtful probing" of all registrants who, as the defendant in this case, have little understanding of the law and regulations to which they are subject. Cases of this sort require the expenditure of more than the twenty minute inter-

view granted by the Local Board in this case.

We recognize that Section 1604.71 providing for the appointment of a Government Appeals Agent has recently been revoked. See Federal Register, Vol. 36, No. 237—Thursday, December 9, 1971, page 23375. It was, however, in effect during the processing of defendant's case. What we have said in regard to the failure to utilize the services of that official to assist the defendant under the circumstances of this case is not affected by the abolition of that particular office.

The record in this case does not show whether the Director of Selective Service had appointed an Advisor to Registrants for Local Board No. 33, as authorized by Section 1604.41 of the Regulations. That regulation, of course, is still effective and is presently the subject of a proposed amendment. See Federal Register, Vol. 37, No. 7—Wednesday, January 12, 1972, page 479. Had such an official been appointed for the Local Board involved in this case he would have been another official within the Selective Service System who could have afforded the defendant the assistance required under the circumstances of this case. It is to be expected that with the abolition of the office of Government Appeals Agent, the Director of Selective Service will exercise the power granted by Section 1604.41 in order that the duties formerly imposed by revoked Section 1604.71 to protect the rights of the registrant in all matters be discharged by some official within, rather than outside, the Selective Service System.

The failure to provide any assistance of any sort in cases which involve factual circumstances similar to this case would present obvious questions of procedural due process in future cases. Judge Browning, in his dissent in Lockhart v. United States, (9 Cir., 1969) 420 F.2d 1143 at 1152, directed attention to both Section 1604.41 and Section 1604.71 and to the report of the National Advisory Commission on Selective Service to support his observation that "despite the complex nature of this process, the assist-

ance that the Selective Service System provides registrants is often illusory." See also United States v. Weller, (N.D. Cal., 1969) 309 F.Supp. 50, remanded to the 9th Circuit 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26 (1971).

We are familiar with United States v. Jones, (7 Cir., 1967) 384 F.2d 781, and earlier cases which discuss various facets of Section 1604.41. We do not believe that the rationale of those cases either reflects current developments in conscientious objector cases, at least in this Circuit, and certainly are not applicable to the sort of factual circumstances presented by this case.

We believe that appropriate recognition has been given the necessity for adequate assistance to registrant by the pending proposed amendment to Section 1604.41 which would broaden the duties and responsibilities of Advisors to registrants. The proposed Amendment to Section 1604.41 provides:

Advisors to registrants may be appointed by the Director of Selective Service upon recommendations of the State Director of Selective Service to advise and assist registrants in the preparation of questionnaires and other selective service forms and to advise registrants on other matters relating to their rights and liabilities under the selective service law. The names and addresses of advisors to registrants within the local board area shall be conspicuously posted in the local board office.

It would seem clear that the proposed amendment recognizes that Advisors must, in future cases, advise the registrant of his rights as well as his liabilities under the Act. In the pending case no one advised either the defendant or the Selective Service System how defendant's claim for conscientious objector status should be properly processed.

Fair and careful processing of difficult and complicated conscientious objector cases before the Local Board would pay dividends in the conservation of time of Appeal Boards, United States Attorneys,

defense counsel, and members of the federal judiciary. The record of acquittals on the District Court level and reversals by Courts of Appeals and the Supreme Court in conscientious objector cases is a reflection of improper administrative processing within the Selective Service System which reflects adversely on the effective administration of the Act.

Consistent with the rationale of *Bagley* and *Stoppelman,* we find and conclude that the failure of the Local Board to require and permit the Government Appeals Agent to discharge his duty to properly protect the rights of the registrant, under the circumstances of this case, was clearly prejudicial to the defendant. We further find and conclude that the failure of the Appeal Board to remand the case to the Local Board for it to conduct an appropriate hearing consistent with due process principles was also clearly prejudicial. And, finally, we conclude that the failure of the Kansas Selective Service authorities to comply with the request of the United States Attorney to reopen defendant's file under the circumstances of this case deprived this particular defendant, in the context of this case, of due process of law.[15]

15. On October 18, 1971, the Executive Secretary of the Local Board wrote the State Director, advising that the United States Attorney had directed the Local Board to reopen defendant's case and to determine whether defendant was entitled to a ministerial exemption or, in the alernative, to conscientious objector status. Consistent with Local Board Memorandum No. 56, the Local Board explicitly requested; "Will you please check for us to determine if the "NEW TESTAMENT CHURCH" at Lynd, Minnesota is an approved religious organization for the training of ministers as required under Local Board Memo. No. 56."

The Local Board attempted to comply with the United States Attorney's direction that it reopen defendant's case. The unexplained ultimate refusal of the Kansas Selective Service authorities to comply with that request was without basis in fact and prejudicial to defendant's right to a proper determination of his con-

## V.

Defendant's acquittal, of course, does not mean that he is either exempt from the requirements of the Selective Service Act or immune from some possible future criminal prosecution. Defendant's Selective Service file, however, makes it apparent that additional factual circumstances must be considered by the Local Board in connection with future processing of the defendant. Defendant's file shows that on January 18, 1971, four days before he was scheduled for induction, he presented the Local Board with a letter which, among other things, stated that he had been "prophesied over and the Lord has spoken and directed that I am to stop traveling around and take root in the church which He leads me to . . . . I feel the Lord is leading me to a New Testament Church. . . . I am waiting for more confirmation. When God says go, I'll go." Defendant attached a 48 page pamphlet published by the Grace Gospel Church of Waco, Texas, entitled "God's Divine Order for His New Testament Church in Faith and Practice." His letter indicated that he was studying to become a minister of that sect.[16]

Apparently the defendant believed he received the Word because on October 1,

scientious objector claim. See Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970).

16. The author of that typical fundamentalist tract stated his remembrance of things past:

As a small boy the writer attended old-fashioned Methodist camp meetings, and there saw many healed by the fervent prayers of righteous people. He saw fall from their benches and lay in the sawdust a number of deeply concentrated men and women under the power of God."

Local Boards will come to understand present day Jesus People when appropriate recognition is given to the origin of the doctrines and dogma which those individuals and groups have adopted from the past. See Section IX and X entitled Conversion in William James, The Varieties of Religious Experience (1901–2), for examples of earlier precepts of Revivalism. It was over seventy-five years

1971 the Local Board received a "To Whom It May Concern" letter, apparently on a mimeographed form, which certified that the defendant had "applied for acceptance into the New Testament Church of Lynd, Minnesota to study and train for the ministry" and that he had been "accepted" for that purpose. That letter was signed by the Pastor and three elders of the church.

On October 1, 1971, the Executive Secretary of the Local Board wrote the State Director of Selective Service at Topeka advising him of the receipt of the letter and stating: "We have no idea if this is a bona fide recognized church and school for the training of ministerial students."

We, like the Executive Secretary of Local Board No. 33, have no idea whether the New Testament Church of Lynd, Minnesota, is a bona fide, recognized church and school for the training of ministerial students. We do know, however, that there is sufficient data in this file to require that an appropriate inquiry must be made in regard to that question in connection with any future classification of the defendant in this case. In connection with the power of Local Boards to make proper inquiry, we direct attention to Local Board Memorandum No. 56 on the subject of classification of divinity students which makes it the responsibility of the Local Board to determine whether or not a theological or divinity school is recognized within the meaning of the Act and also whether or not the church or religious organization under the direction of which the registrant is preparing for the ministry is similarly recognized. That Memorandum imposes the duty on the State Director to assist the Local Board. As noted above, such assistance was sought but apparently refused in this case. We trust that the State Director will not repeat that error if his assistance is again requested.

For the reasons stated, it is

Ordered that the defendant should be and is hereby acquitted.

ago that James noted (p. 185 Mentor Book edition) that:

It is natural that those who personally have traversed such an experience should carry away a feeling of its being a miracle rather than a natural process. Voices are often heard, lights seen, or visions witnessed; automatic motor phenomena occur; and it always seems, after the surrender of the personal will, as if an extraneous higher power had flooded in and taken possession. Moreover the sense of renovation, safety, cleanness, rightness, can be so marvelous and jubilant as well to warrant one's belief in a radically new substantial nature.