**UNITED STATES of America,
Plaintiff,**

v.

**Allen COLLINS, Jr., Defendant.**

**No. G–146–71 Cr.**

United States District Court,
W. D. Michigan, S. D.

Feb. 18, 1972.

Robert Green, Asst. Dist. Atty., Grand Rapids, Mich., for plaintiff.

Robert Carr, East Lansing, Mich., for defendant.

## OPINION AND ORDER

FOX, Chief Judge.

Petitioner has been indicted for willfully and knowingly failing to report for and submit to induction into the Armed Forces of the United States, in violation of 50 United States Code App., § 462. He has moved this court to dismiss the indictment on the grounds that the classification procedures employed by his local Selective Service Board violated his constitutional rights to due process of law.

On April 15, 1970, Allen Collins, Jr. was classified III–A following the death of his father in October of 1969. This hardship deferment was granted after Collins wrote a letter to his local board telling of his father's death, the fact that he was his mother's only son, and asserting his mother's need of his services in managing family affairs and the family businesses. Petitioner's claim for a deferment was further supported by a letter dated April 15, 1970 sent to the local board by his mother's attorney, Thomas Walch (although this letter was not filed in petitioner's selective service file until August 10, 1970, almost two months after he was reclassified (I–A).

On June 7, 1970, a report of oral information was placed in petitioner's file. This report read in its entirety as follows:

"New information indicates he is not at present performing as claimed. Anonymous."

This report was truly anonymous, for it not only failed to identify the informant but also included no identification by signature of the Selective Service employee who took the report. Neither the report nor any additional information in petitioner's file as of July 20, 1970 furnished any elaboration whatever as to what was the nature or substance of the "new information" received.

On June 17, 1970, Collins was reclassified I–A. He did not appeal this reclassification with either the local board or the state appeal board, and on July 20, 1970 he was ordered to report for induction. Additional information apparently unfavorable to petitioner was thereafter placed in his file but is irrelevant to these proceedings, since it is the July 20 order which is here the subject of the indictment under challenge.

Petitioner argues that he was never told of the new information in his file which prompted his reclassification and hence never afforded an opportunity to intelligently rebut it. Although he readily concedes that his local board was under no duty to keep him advised of every piece of data collected and placed in his file, he strongly asserts the right to have been informed that such damaging and suspect material was placed in his file and immediately made the basis of a very detrimental reclassification. He asserts that without such notice, his capacity to frame an intelligent course of conduct relative to appeal of the reclassification was severely infringed. So serious, in fact, was this infringement, argues petitioner, that it constituted a denial of his constitutional fifth amendment right to a full and fair hearing consistent with the standards of due process of law.

The government, in reply, does not purport to defend the basis or soundness of the board reclassification action or to claim that notice of the new material in the file was given but, rather, argues that petitioner's failure to appeal the reclassification must foreclose his present right to challenge it as a defense to criminal prosecution in this court.

Petitioner cites several cases in support of his position that notice of detrimental evidence and lines of argument is an essential requisite of due process in an adversary hearing. Most significant and representative of these is Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). That case established the right of a registrant to receive a copy of the Justice Department's recommendation to the state appeal board. The court reasoned:

"The registrant already has the right to file a statement with the Appeal Board. Just as the right to a hearing means the right to a meaningful hearing, United States v. Nugent, supra [346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953)]; Simmons v. United States, supra [348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955)], so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered." (At pages 414–415, 75 S.Ct. at page 413.)

In ruling that "the petitioner was entitled to know the thrust of the Department's recommendation so he could muster his facts and arguments to meet its contentions," the court cited with approval language from Morgan v. United States, 304 U.S. 1, at page 18, 58 S.Ct. 773, at page 776, 82 L.Ed. 1129 (1937):

"The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a qua-

sijudicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command."

The government makes two responses to this line of case authority. First, it argues that all of the selective service cases cited by Collins involved rights before the state appeal board and hence are inapplicable here, since Collins never was before the state board. Second, the government asserts that Collins was at all times free to go down to the local board offices to examine his file and discover whatever material it contained.

■ As to the first point, the court finds that whatever standards are applicable to assess the compatibility of state board proceedings with constitutional due process requirements are equally applicable to local board proceedings. In order to pursue a meaningful hearing by way of personal appearance at the local board level, a registrant must be aware of the facts and arguments he will face in no less a degree than one pursuing appeal before the state board.

■ Thus, the true issue posed is not whether petitioner can contest local proceedings in the same manner as state proceedings but is whether filing a request for personal appearance or notice of appeal is necessary to trigger the right of a registrant to be informed of the major elements of the case against him. In his own case, Collins might well have been sparked to pursue appeal had he been made aware that his reclassification was inspired by an anonymous record of uncorroborated and unspecified information obtained from an anonymous source. Absent such awareness, he may very reasonably have assumed that his board proceeded properly upon a legitimate reappraisal of the true facts of his situation.

To say that a registrant must first file a request for personal appearance or notice of appeal before being entitled to notification of adverse material in his file would be to say that registrants can reasonably be expected to protest in the dark and seek reasons later. While such an approach is no doubt practiced by many, especially those methodically set upon a course of resistance to the authority of the selective service system, this court cannot justify the notion that such behavior should be expected from all. Such a principle could only operate to the unfair detriment of the obedient, the cooperative and the unsophisticated. (Nothing in the record indicates that Allen Collins ever failed in any way to cooperate with his local board or to respect its authority.) Nor can this court accept the assumption that once a registrant complies with the formality of filing appeal papers, all knowledge formerly obscured will be instantly revealed.

■ The cases establish that one seeking to preserve his rights in an administrative proceeding must be informed of the substance of facts and arguments against him. Gonzales, supra; Morgan, supra; United States v. Cabbage, 430 F.2d 1037 (6th Cir. 1970); United States v. Owen, 415 F.2d 383 (8th Cir. 1969). At some point he must be told. This court can see no logical or practical reason why the line which circumscribes this right should be constitutionally drawn precisely at the point of filing of appeal by the registrant. Much more reasonable is the notion that the right to be informed attaches, at least where at all practicable, at the time of the decision adverse to the prospective appellant's interests.

■ Notification of this petitioner of the significant "new information" which clearly led to his reclassification would have imposed no significant administrative burden on the local board whatever. In cases where new information is more voluminous, a simple notice accompanying the SSS form 150 (notification of reclassification and appeal rights) which indicated that such new information existed, bore directly on the reclassification decision and stood available, separately, for inspection would suffice to afford the registrant a fair opportunity

to form an intelligent plan for pursuing meaningful administrative review. The instances wherein all the circumstances requiring such notice will coalesce should be few.

■ This court further notes that requiring notice be given a registrant of very significant adverse material in his file before appeal is foreclosed will work no significant disruption of orderly administrative review. Circumvention of regular appeal procedures under this ruling will not be within the control of individual registrants; therefore, the system can protect itself with minimal inconvenience.

With regard to the government's second point, the court notes that a similar argument was raised and rejected by the Supreme Court in Gonzales, supra. In that case, the government contended that after the state board appeal hearing, the registrant would be free to examine his file, discover the Justice Department recommendation and file for rehearing, as was his right by regulation. The court responded:

"We believe these remedies to be too little and too late. Too little, because the right to present petitioner's side of the case is broader than the bare right to correct 'errors' made by the Department in its recommendation." (Too late for reasons here inapplicable.) (At page 417, of 348 U.S., at page 414 of 75 S.Ct.)

■ The Eighth Circuit Court of Appeals also ruled directly on this question in United States v. Owen, supra (cited with approval by the Sixth Circuit in United States v. Cabbage, supra):

"While we may charge literate registrants with knowledge of information with which they are directly confronted, such as that contained on registration or classification cards, we may not expect a working knowledge of selective service regulations *or inquiry at the office of the local board to guard against information received from an outside source.* Inherent in the most narrow view of due process

is the right to know of adverse evidence and the opportunity to rebut its truth and relevance." (Emphasis supplied.) At page 388, of 415 F.2d.

A selective service registrant, especially but not only an unsophisticated one, should not be forced to repeatedly inspect his file in search of flimsy, misleading and prejudicial material in order to protect himself from the severe criminal sanctions which are provided by the Selective Service Act.

In this case, even if petitioner had diligently investigated the contents of his file at the appropriate time, his inexperienced eye, unfamiliar with the myriad documents and forms contained therein, might have failed to note the existence and/or significance of the single, unidentified, vague handwritten sentence which proved his undoing.

One final word is in order. The parties have engaged in extensive discussion of the exhaustion of remedies doctrine and the two recent Supreme Court cases which have refined the application of that doctrine in the context of selective service cases. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1968); McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). This court is of the judgment, however, that the doctrine itself, and consequently the cases cited, are essentially irrelevant to petitioner's claims as presently posed.

■ Briefly stated, the exhaustion of remedies doctrine, as elucidated in McKart and McGee, supra, expresses the proposition that courts will ordinarily not review factual decisions of administrative bodies before the aggrieved party has first pursued all available administrative review. Applied to the facts of this case, the doctrine undoubtedly acts to bar petitioner from asking this court to overturn the June 17, 1970 decision of his local board that he was no longer entitled to a III–A hardship deferment. Before he could assert, for example, that the board's decision in this respect was without basis in fact, he would have to meet the obstacle of the exhaustion doc-

772

trine, since he failed to appeal the local board's factual determination. This consequence is precisely the reason why the fact petitioner never was informed of adverse material, if this fact legally obstructed his capacity to appeal, amounts to a constitutional infringement of due process.

 In the instant case, Collins is not asking that the local board's disposition be overturned due to the weak nature of the evidence in his file which contradicted his prima facie claim for a III–A classification. Rather, he is seeking to dismiss the indictment, and the induction order upon which it rests, on the grounds that his local board processed his file in an unconstitutional manner when it failed to advise him of the adverse material placed in his file on June 7, 1970. Regardless of its merits, this claim is a purely procedural one, not turning on the resolution of any disputed facts which could better have been left to the experienced expertise of the administrative system and not directly contesting the factual, or even legal, basis of the reclassification decision itself. Hence, the exhaustion doctrine is not applicable.

This is not to say, however, that petitioner's failure to request a personal appearance or file appeal is irrelevant in this case. These factors are relevant, but only as they pertain to the definition of petitioner's due process rights— and in this regard they have been fully addressed above.

This court finds that during June and July of 1970, Allen Collins neither actually knew of the anonymous new information in his file nor was derelict in failing to obtain this knowledge for himself. Without this knowledge, he was without the tools to meaningfully participate in a review of his reclassification which would have comported with the requirements of due process of law imposed by the Fifth Amendment to the United States Constitution.

Accordingly, the July 20, 1970 induction order which directed petitioner to report for and submit to induction on August 31, 1970 was improperly issued and invalid. Therefore, petitioner's motion to dismiss the indictment is hereby granted.

It is so ordered.