**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William Walter NELSON, Defendant-Appellant.**

**No. 72–2383.**

United States Court of Appeals,
Ninth Circuit.

April 12, 1973.

John Herbert (argued), San Francisco, Cal., for defendant-appellant.

James H. Daffer, Asst. U. S. Atty. (argued), James L. Browning, John Cooney, F. Steele Langford, Asst. U. S. Attys., San Francisco, Cal., for plaintiff-appellee.

Before BROWNING and DUNIWAY, Circuit Judges, and BURNS,* District Judge.

PER CURIAM:

Nelson appeals his conviction under 50 U.S.C. App. § 462(a) for refusal to submit to induction in the armed services. We reverse.

Nelson filed his request for classification as a conscientious objector on December 4, 1968. On December 16 his local board classified him I–A. On January 20, 1969, Nelson appeared personally before the board. The board refused to reopen on the ground that Nelson's claim

---

\* Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

was not based on religious grounds but "on a personal moral code."

Nelson appealed. The appeal board classified him I-A.

In September 1970, however, the State Director ordered the local board to reconsider, stating, "Our review of the selective service file of the registrant fails to disclose sufficient grounds to overcome a basis in fact in the claim of the registrant under the Welsh decision."

Pursuant to the State Director's order, the local board met on November 20, 1970, and, without requesting that Nelson appear before them, again denied his claim. The board stated: "After review, considering the registrant's demeanor and responses to questions asked at the personal appearance of January 20, 1969, the local board finds the registrant insincere." Nelson did not appeal.

In the course of these criminal proceedings, the government stipulated that no member of the panel who participated in the November 1970 classification had been present when Nelson made his personal appearance before the board in January 1969.[1] Thus, no member of the panel that found Nelson insincere on the basis of his demeanor had ever seen or spoken to him.

Nelson challenges the rejection of his C.O. claim on two grounds: (1) that the board's action was without basis in fact; and (2) that the board denied him due process.

■ The government argues that Nelson cannot attack the November 1970 classification because he did not take an administrative appeal. The district court held that Nelson's basis-in-fact defense was barred by his failure to exhaust administrative remedies, but that his due process claim was not barred. We agree.

For the reasons spelled out in McGee v. United States, 402 U.S. 479, 486, 489–

490, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), the policies served by the exhaustion requirement are "decisively implicated" when a registrant challenges the denial of a conscientious objection claim as without basis in fact. Those policies would not be served, however, by denying judicial review of Nelson's due process defense.

No administrative discretion or expertise is involved in determining whether it was a violation of due process for the members of the local board to base their decision upon Nelson's "demeanor" in an appearance 22 months earlier before other persons, rather than requiring him to appear before them, as they had a right to do. 32 C.F.R. § 1625.1(c).

The government does not suggest that an administrative appeal would have resulted in a fuller factual record on the due process issue.

Allowing those few who are "similarly situated" to Nelson to bypass administrative appeals could hardly "seriously impair the Selective Service System's ability to perform its functions." McKart v. United States, 395 U.S. 185, 197, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194 (1969).

■ Finally, the exhaustion doctrine is not to be applied merely because the appeal board *might* have granted appellant relief on some ground and thus have obviated the need for prosecution. *See* McKart v. United States, *supra.*

The lower federal courts have held the exhaustion requirement inapplicable to claims analogous to Nelson's due process claim. In United States v. Collins, 339 F.Supp. 767 (W.D.Mich.1972), the local board terminated Collins' III-A (hardship) deferment and classified him I-A. He did not appeal. In a subsequent criminal prosecution he contended that he had been denied due process because the board relied upon anonymous information of which he had no notice. The

---

1. The case was tried on two separate days some two and one-half weeks apart. Between trial days, appellant's counsel learned that the two panels had been composed of completely different board members. The government then stipulated to the fact on the second trial day.

government responded that Collins had not exhausted his administrative remedies. The court held that Collins' due process claim was not barred, stating: "Regardless of its merits, this claim is a purely procedural one, not turning on the resolution of any disputed facts which could better have been left to the experienced expertise of the administrative system and not directly contesting the factual, or even legal, basis of the reclassification decision itself. Hence, the exhaustion doctrine is not applicable." 339 F.Supp. at 772. *Accord*, Wills v. United States, 384 F.2d 943, 945 (9th Cir. 1967); United States v. Weaver, 336 F.Supp. 558, 562 (E.D.Pa.1972); United States v. Mallory, 305 F.Supp. 915, 920 (N.D.Calif.1969).

Turning to the merits, we conclude that Nelson's due process claim is well taken.

The evidence that none of the board members who decided that Nelson was insincere because of his "demeanor" actually observed him was sufficient to rebut the presumption of administrative regularity and require the government to prove that due process was not violated.

The government offers three theories in justification: (1) "demeanor" doesn't mean "demeanor"; (2) the board members who finally rejected Nelson's C.O. claim may have consulted with the persons who did observe Nelson at his personal appearance 22 months earlier; or (3) they may have relied on Nelson's written summary of what went on at that appearance.

We reject the first suggestion because we must assume the board means what it says if judicial review is to have meaning.[2] We reject the remaining suggestions because we cannot accept their premise that appellant's demeanor could be appraised by any method other than personal observation. Nelson was en-

titled to the judgment of the members who composed the board when his 1-O application was finally rejected, not the "borrowed" judgment of the earlier board. The new members could easily have called Nelson in and made their own decision as to the significance of his appearance.

The judgment of the district court is reversed.

---

2. For definitions of "demeanor," *see* Dyer v. MacDougall, 201 F.2d 265, 268–69 (2d Cir. 1952); Rains v. Rains, 17 N.J. Misc. 310, 8 A.2d 715, 717 (1939).