**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael Francis HODGINS, Defendant-Appellant.**

**No. 72-2844.**

United States Court of Appeals, Ninth Circuit.

Aug. 2, 1973.

Rehearing Denied Nov. 2, 1973.

Michel F. Willey (argued), San Francisco, Cal., for defendant-appellant.

Joseph E. Reeves, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before MERRILL and ELY, Circuit Judges, and MURPHY, District Judge.*

MERRILL, Circuit Judge:

Appellant has taken this appeal from conviction of refusal to submit to induction into the armed forces. At issue is the validity of his classification as I–A in light of his application for conscientious objector status. His motion for acquittal was denied by the District Court upon two grounds: that he had failed to state a prima facie claim for a I–O classification; that he had failed to exhaust his administrative remedies. Appellant contends that in both respects the court was in error.

When appellant registered for the draft he applied for a I–O status and completed and filed his SSS form 150 with the local board. The local board rejected a I–O classification without stating reasons, and he was classified

---

* Honorable Thomas F. Murphy, Senior United States District Judge for the Southern District of New York, sitting by designation.

I–A. He was granted a personal appearance before the local board. It adhered to its classification. On appeal, the appeal board retained him in I–A without giving reasons. After physical and psychiatric examination he was then reclassified I–Y. Some months later he was re-examined and determined to be fit and was then reclassified I–A. No appeal was taken from this last reclassification. On being ordered to report for induction, he appeared but refused induction.

In support of the District Court's judgment the Government contends that appellant failed to state a prima facie claim for conscientious objector status in that insufficient information was presented as to the religious nature of his beliefs, how they came to be acquired or the depth to which they were held. We cannot agree.

■ The "three basic tests" for conscientious objector status as specified in United States v. McKinley, 447 F.2d 962, 963 (9th Cir. 1971) are: (1) that the registrant is opposed to war in any form, rather than selectively to some wars; (2) that his opposition is founded upon religious training and belief (as this language was construed in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970)); (3) that his beliefs are sincerely held. (Appellee's reliance on the result in that case is, however, misplaced. It is clearly distinguishable on the facts. There, no form 150 was filed. The registrant relied solely upon an answer he supplied to a question in a current information questionnaire which made no effort to show religious foundations for belief: "I am physically and mentally incapable of killing another human being.")

■ The answers given by appellant in his form 150 are set forth in the margin.[1] In three short sentences he

1. "Series I.

B I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in non-combatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and non-combatant training and service in the Armed Forces."

"Series II.

Q. '1. Do you believe in a Supreme Being?

A. Yes.

Q. 2. Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation.

A. I believe that God is love and the ability to love. I believe in God. Therefore, I cannot take another human's life, or assist in that taking, but can only love him.

Q. 3. Explain how, when and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above.

A. I went to Christian Science Sunday School for several years, and then started thinking on my own. Since then, I have been reading and meditating alone, or with friends and counselors.

Q. 4. Give the name and present address of the individual upon whom you rely most for religious guidance.

A. None.

Q. 5. Under what circumstances, if any, do you believe in the use of force?

A. Force comes in many forms. I would use force to protect an innocent from being hurt by someone. This force is restraint. But *killing* someone because of his views, or the views of his side stand for, conflict with mine, or the views my side stands for,— that is wrong.

Q. 6. Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious convictions.

A. The opportunity, such as you are asking for, never came up. I do, however, try to make love as much a part of my existence as I possibly can.

Q. 7. Have you ever given public expression, written or oral, to the views herein expressed as the basis for your claim made in Series I above? If so, specify when and where.

A. No.' "

sufficiently described his concept of God and why it was that the nature of his belief in God precluded his taking human life. "I believe that God is love and the ability to love. I believe in God. Therefore, I cannot take another human life or assist in that taking, but can only love him." Nowhere does it appear that his objection to war was selective. Absence from his statement of self-serving protestations of sincerity or depth of feeling does not, in our view, defeat a prima facie claim since these matters more appropriately and effectively are subject to exploration in interview.

■■ Assuming that appellant's beliefs were sincerely and deeply held (and we find nothing in the record inconsistent with sincerity or depth of feeling), this statement was sufficient to provide a prima facie claim. In denying him a conscientious objector status it was then incumbent upon the local board or the appeal board to specify the basis for denial—whether it was founded on a view that the statement was legally insufficient or upon a finding of lack of sincerity or necessary depth of belief. United States v. Haughton, 413 F.2d 736, 738 (9th Cir. 1969). Here the records of the local board show only "the local board did not feel there was sufficient reason to be granted a I–O classification."

We conclude that appellant was improperly classified I–A.

The Government further contends that by failing to appeal his reclassification from I–Y to I–A, appellant failed to exhaust his administrative remedies and is thus precluded from judicial review. We cannot agree.

In McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), the Court discussed at length the reason for the exhaustion rule. It is designed to avoid premature interruption of the administrative process and allow the agency a measure of autonomy subject to review for abuse. 395 U.S. at 193–194, 89 S.Ct. 1657. It serves to allow the agency to develop the factual background for the case and exercise its administrative expertise. 395 U.S. at 194, 89 S.Ct. 1657. It serves to avoid judicial intervention, at a point when the administrative process may yet resolve the dispute favorably to the complainant. 395 U.S. at 195, 89 S.Ct. 1657.

The Court noted, however, that these administrative law principles may have to be softened somewhat in the Selective Service context where the registrant is denied any judicial review of his induction order, save in criminal proceedings had against him. "Such a result should not be tolerated unless the interests underlying the exhaustion rule clearly outweigh the severe burden imposed upon the registrant if he is denied judicial review." 395 U.S. at 197, 89 S.Ct. at 1664.

In the case before us all purposes of the exhaustion rule had been met when the appeal from the original I–A classification was taken. No new circumstances appear to have arisen that would suggest that the question on appeal from reclassification would in any respect be different. The reclassification to I–A was from I–Y, and the issues upon appeal would rationally seem to relate to the propriety of terminating the I–Y classification. If properly terminated, the justification for the I–A classification had already been determined. Insistence on a second appeal, under these circumstances, would simply subject the appeal board to a rehearing upon the same facts, a result that would seem to add unnecessarily to its burdens. To require the registrant to seek rehearing on all occasions when the opportunity fortuitously presents itself, in our view places an undue burden on him without any compensating administrative advantages.

United States v. Nelson, 476 F.2d 254 (9th Cir. April 12, 1973), is distinguishable. While it holds that a claim of lack of basis in fact was barred by failure of the registrant to take a second administrative appeal following reopening and reclassification by his local board, an entirely new issue was presented by the lo-

cal board action, one that had not been presented on the first appeal.

■ We conclude that the rule requiring exhaustion of administrative remedies did not require the taking of appeal from the order reclassifying appellant I–A from his I–Y classification.

Judgment reversed.

MURPHY, District Judge.

With great respect, I disagree.

What with the Congress having ended compulsory military service and peace a fact in Vietnam, perhaps it is too late in the game to protest. I feel, however, constrained to do so.

Only two issues are presented for review: (1) whether the Local Board had a "basis in fact" for the denial of appellant's classification as a conscientious objector, and (2) whether appellant failed to exhaust his administrative remedies after he was reclassified from 1–Y to 1–A. A summary of his selective service file reveals the following.

Appellant registered for the draft on October 18, 1966, three days after he became 18, and stated in his classification questionnaire that he claimed exemption as a conscientious objector by signing "Series VIII," which reads:

"Conscientious objectors (do not sign this series unless you claim exemption as a conscientious objector.)

"By reason of religious training and belief I am conscientiously opposed to participation in war in any form and hereby request that the Local Board furnish me the Special Form for Conscientious Objector (SS Form No. 150.)

Michael Francis Hodgins"

On March 12, 1967, he was sent Form No. 150, which he answered and filed on April 3, 1967. The Local Board classified him 1–A on April 11, 1967, and appellant appealed on April 19th. Before the appeal was heard he was accorded a personal appearance before his Local Board on May 9, 1967. After the personal appearance, the Clerk of the Local Board made the following endorsement on his file:

"The Local Board reviewed and did not reopen registrant's file. Registrant was to remain in classification 1–A. File to be forwarded to Appeal Board for a final determination.

"The Local Board did not feel there was sufficient reason to be granted a 1–O classification."

On August 31, 1967, the Appeal Board retained the appellant in classification 1–A.

After having failed to report for a pre-induction physical examination on August 7, 1967 (which prompted a delinquent warning), he was again ordered to report for a pre-induction physical on April 12, 1968. He then reported, but refused to allow a serology test to be performed. He again reported on May 15, 1968, and was examined by a psychiatrist, who recommended that he be classified 1–Y and to be recalled for a further examination in one year. He was so classified by his Local Board on June 14, 1969, and ordered to appear for another pre-induction physical examination on August 8, 1969. He reported on this date and was again examined and found fit for military service, and was so notified. He was reclassified by the Local Board from 1–Y to 1–A on October 7, 1969.

On June 17, 1970, he was ordered to report for induction on July 15, 1970, and failed to report.

On March 17, 1971, he wrote to the Local Board: "I will submit to induction if so ordered to appear," signing his new name, "Michael Francis Benier." Accordingly, he was ordered to report for induction on April 22, 1971. He reported, but refused to submit to induction.

The District Judge heard the case without a jury on February 22, 1972. The only issues before him were the identical issues presented to us. The District Judge held the case under advisement for one month, and filed a Memorandum on March 21, 1972. The

District Judge, after quoting the three tests summarized in United States v. McKinley, 447 F.2d 962 (9th Cir. 1971), held:

"Defendant's Form 150, his responses at his personal appearance, and all of the other documents submitted to his Local Board prior to his denial of his 1–O classification on May 9, 1967, do not meet the requirements for the presentation of a prima facie case of conscientious objection enunciated in *McKinley, supra.*

"Defendant's failure to present facts sufficient to constitute a prima facie entitlement to a 1–O classification is dispositive of the case."

The District Court accordingly did not pass on the exhaustion of administrative remedies.

Defendant was sentenced on September 8, 1972. The judgment was that imposition of the sentence be suspended and defendant placed on probation for a period of three years under the provisions of the Youth Corrections Act, on condition that he perform two years' work of national importance at the rate of 40 hours per week if compensated and 20 hours per week if uncompensated.

The Supreme Court, in Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), compendiously stated the benchmarks we must follow in order to determine whether a registrant has made out a prima facie claim:

"In order to qualify for classification as a conscientious objector, a registrant must *satisfy* three basic tests. He must *show* that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437 [91 S.Ct. 828, 28 L.Ed.2d 168]. He must *show* that this opposition is based upon religious training and belief, as the term has been construed in our decisions. United States v. Seeger, 380 U.S. 163 [85 S.Ct. 850, 13 L.Ed.2d 733]; Welsh v. United States, 398 U.S. 333 [90 S.Ct. 1792, 26 L.Ed.2d 308]. And he must *show* that his objection is sincere. Witmer v. United States, 348 U.S. 375 [75 S.Ct. 392, 99 L.Ed. 428]. In applying these tests, the Selective Service System must be concerned with the registrant as an individual, not with its own interpretation of the dogma of the religious sect, if any, to which he may belong. United States v. Seeger, *supra*; Gillette v. United States, *supra*; Williams v. United States, 216 F.2d 350, 352," 403 U.S. at 700. (Emphasis supplied.)

Judge Merrill has construed appellant's answers to the questions on Form 150 as follows:

"In three short sentences he sufficiently described his concept of God and why it was that the nature of his belief in God precluded his taking human life. 'I believe that God is love and the ability to love. I believe in God. Therefore, I cannot take another human life or assist in that taking, but can only love Him.' Nowhere does it appear that his objection to war was selective. Absence from his statement of self-serving protestations of sincerity or depth of feeling does not, in our view, defeat a prima facie claim since these matters more appropriately and effectively are subject to exploration in interview.

"Assuming that appellant's beliefs were sincerely and deeply held * * * this statement was sufficient to provide a prima facie claim. In denying him a conscientious objector status it was then incumbent upon the local board or the appeal board to specify the basis for denial—whether it was founded on a view that the statement was legally insufficient or upon a finding of lack of sincerity or necessary depth of belief. United States v. Haughton, 413 F.2d 736, 739 (9th Cir. 1969) * * *.

"We conclude that appellant was improperly classified 1–A."

If we read Judge Merrill's opinion on the conscientious objector claim correctly, it appears to be bottomed on two propositions: (1) that appellant, in his

Form 150, said enough to sustain his burden and therefore he was improperly classified 1–A, and (2) that the Local Board, in denying him conscientious objector status, was required to specify the basis for the denial, *i. e.*, either that the registrant's statement was legally insufficient or that he lacked sincerity, citing *Haughton, supra.*

We cannot tell with certainty whether the majority relied on the sum total of the two propositions or on each as a separate reason. We are inclined to the belief that they are two separate reasons, since Judge Merrill found, assuming the appellant's beliefs were sincere, that his "statement was sufficient to provide a prima facie claim," and secondly, if the Local Board's cryptic reason ("The local board did not feel there was sufficient reason to be granted a 1–O classification") meant it was not satisfied as to his sincerity, it should have said so in so many words.

In *Haughton* we did not say that the Local Board was required to give a reason where the registrant's statement was legally insufficient. What we said in *Haughton* was:

> "The local board, however, must state the reasons for its denial of a requested classification when a registrant has 'met the statutory criteria' * * * for that classification or, in the language of *Dickinson*, Dickinson v. United States, 346 U.S. 389, 74 S. Ct. 152, 98 L.Ed. 132, has placed himself 'prima facie within that statutory exemption' * * *." 413 F.2d at 739.

We are not here concerned with the problem of the sufficiency of the Local Draft Board's reasoning in denying him a 1–O classification. Although we have held many times that where the registrant presented a prima facie case, the Draft Board was under an obligation to specify its reasons for its refusal to so classify the registrant (see cases collected in United States v. Jamison, 463 F.2d 1219, 1220 (9th Cir. 1972)), the rule is otherwise when no prima facie case is presented. In such a situation the Board need not disclose its reasons for denying conscientious objector classification. United States v. Weaver, 423 F.2d 1126, 1127 (9th Cir. 1970).

In any event, the Local Board did give its reason. While the reason may not be crystal clear, since it was made by a layman, it probably meant that the Board thought that the answers of the applicant on Form 150 were legally insufficient to support his claim.

Accordingly, we focus our attention on the answers which appellant gave in his Form 150 and whether they *show* or *satisfy* the three basic tenets.

Our first submission is that merely because he signed the second paragraph under Series I—Claim For Exemption, which precedes the questions and is quoted by Judge Merrill on page 2 of his footnotes, adds little or nothing to his claim for conscientious objector status. We have held as much in United States v. Enslow, 426 F.2d 544, 546 n. 5 (9th Cir. 1970), where a registrant had signed the same preliminary statement albeit in his classification form and never filed a 150 Form.

In answer to the questions on which the Local Board was required to make an informed judgment on the issue of his conscientious objection to participation in war in any form, under the caption "Religious Training and Belief" the appellant at no place says that he is conscientiously opposed to participate in war in any form, and we submit that it is misleading to say, as Judge Merrill has said, "Nowhere does it appear that his objection to war was selective." He never used the word "war," and made no reference to that word in any of his handwritten answers. We have said that a "registrant's mere assertion that he has the requisite subjective beliefs does not establish his right to the privilege." Keefer v. United States, 313 F.2d 773, 777 (9th Cir. 1963).

The most that appellant said in answers to the questions in Form 150 was that he did not believe in killing, that he

believed God is love and the ability to love, and that the basis of his belief was that he went to a Christian Science Sunday School for several years and then started to think, and read, and meditate. I respectfully submit that such disbelief in killing is the consensus of most of the people of the civilized world, and that it cannot be equated with a conscientious opposition to war in any form. What his teaching was in his Sunday School classes in the Christian Science religion he did not reveal, but we know that the question is not what the tenets of his church are, but the beliefs of the registrant himself. Clay v. United States, *supra*.

Judge Merrill dismisses the registrant's cryptic answer "No" to Question No. 7 in Series II as "a mere absence from his statement of self-serving protestations of sincerity or depth of feeling," as not defeating a prima facie claim, and excuses the absence of any answer by claiming that these matters "more appropriately and effectively are subject to exploration in interview." Quite obviously no one answer to any one question determines whether or no the registrant's claim is prima facie sufficient, but we submit it is a question that was asked in order to help the Local Board make an informed judgment. The fact that he answered "No" doesn't mean that it would have been "self-serving protestations of sincerity or depth of feeling." The obvious purpose was to furnish the Board with some corroborative evidence of his claim.

The burden of proof is on the registrant. The scope of our review is limited and narrow, and the "decisions of the local boards made in conformity with the regulations are final even though they may be erroneous." Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946). I find myself in accord with the findings of the Local Draft Board, the Appeal Board, and the District Court, namely, that appellant failed to make out a prima facie case for conscientious objector's classification.

Appellant's classification of 1–Y, which he received on June 14, 1969, was changed to 1–A on October 7, 1969. When he was notified of his acceptability for military service, he wrote to the Local Board expressing his displeasure. In his letter of protestation upon being advised of his acceptability for military service, he stated that he would consider working in the C.O. program. This was one month before the Board made his reclassification 1–A. The notice he received of his change of classification advised him of his right to appeal, as did the notice of classification itself. He did not appeal. Eighteen months later he wrote to the Board, as indicated above, that he would submit to induction if ordered to report.

The majority, in holding that appellant was not required, under the circumstances of this case, to exhaust his administrative remedies by appealing the order of reclassification to 1–A from his 1–Y classification, distinguishes United States v. Nelson, 476 F.2d 254 (9th Cir. 1973), by saying: "[A]n entirely new issue was presented by the local board's action, one that had not been presented on the first appeal." We submit that such distinction does not come to grips with the positive holding in *Nelson*. *Nelson* squarely holds that the registrant's basis-in-fact defense (of conscientious objector status) "was barred by his failure to exhaust administrative remedies but that his due process claim was not barred." *Hodgins* raises no issue that can be characterized as a due process claim.

I would affirm.